WILLIAM W. HANNAN v. MAXWELL M. FISHER.

*Real-estate agents—Commissions.*

An agent, in order to recover commissions on the sale of real estate, must show that he procured a purchaser, and from him an unqualified acceptance of an offer of sale which the agent was authorized to make.

Error to Wayne. (Hosmer, J.) Argued June 27, 1890. Decided August 1, 1890.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Corliss, Andrus & Leete,* for appellant, contended for the doctrine stated in the opinion.

*James H. Pound,* for plaintiff, contended:

1. The serious controversy in the case was whether the defendant ever authorized plaintiff to sell as the plaintiff claimed he did. The defendant denied such authorization, and, if his testimony was true, plaintiff had no case. The doubtfulness of Anderson's acceptance was never even argued, and the court so assumed in his charge.

2. This case is within the authority of *McCreery v. Green,* 38 Mich. 185; *Hannan v. Moran,* 71 Id. 261.

MORSE, J. The plaintiff sued the defendant in an action in *assumpsit* upon the common counts, and recovered judgment in the circuit court for the county of Wayne.

The plaintiff claimed that the defendant authorized him to sell 10 acres of land owned by defendant, situated on Woodward avenue, in the city of Detroit; that in pursuance of such authority the plaintiff procured W. K. Anderson, who accepted and stood ready to take the 10 acres of land at $17,000, the price agreed upon between plaint-

iff and defendant; that, after this purchaser was procured, defendant refused to convey the 10 acres, which would be a frontage of 165 feet on Woodward avenue, and would only convey 150 feet frontage for the $17,000. Defendant told plaintiff that he thought he could get the purchaser to pay this price for the 150 feet, which was a little over nine acres. Plaintiff thereupon tried to induce Anderson to take the nine acres at $17,000, but did not succeed in doing so. Mr. Fisher himself afterwards sold the nine acres to other parties for 17,000. Plaintiff claimed that he was entitled to 2 per cent. on the price above named, because, in the first place, he secured a purchaser for the 10 acres, as authorized by defendant, and the sale was only prevented by the action of defendant.

The defendant contended and testified that he never employed plaintiff to sell the land for him; that Hannan first met him on the street, and asked him if he would sell some of his land on Woodward avenue. Fisher replied that he would if he could get his price for it. Hannan said, "I think I can sell a piece of it,—ten acres." About two weeks afterwards Hannan said to him, "I think I have got a customer for that." Mr. Fisher then told him that before Hannan sold any land for him it would be well to understand exactly what was going to be sold, and said to him that the piece they had spoken about, and designated as the south half of lot 5, only contained nine acres and a fraction. In the first conversation he did not authorize Hannan to sell it.

At the second talk plaintiff said he did not think he could sell the 9 acres; the purchaser wanted 10 acres. They had other talks about it, plaintiff wanting defendant to sell the 10 acres, and Fisher refusing to sell more than the 9 acres and fraction. Plaintiff finally asked

defendant to give him an option for one week upon the 9 acres, which he did. After the week was up defendant sold to other parties for $17,000. The option was given to Claude W. Case, who was a clerk of W. K. Anderson, who, plaintiff claims, was the purchaser that he procured for the 10 acres.

In order for the plaintiff to maintain his case, it was not only necessary for him to establish that he was employed to sell the 10 acres at $17,000, but also that he procured a purchaser. He does not claim that he got any purchaser except Anderson, and we think that upon the testimony of Anderson a verdict should have been directed for the defendant. But the circuit judge instructed the jury that Anderson stood ready to take the 10 acres for $17,000, and, if they found that Fisher employed Hannan to sell the 10 acres at that price, the plaintiff was entitled to recover his commission.

It seems that Anderson owned land adjoining that of defendant, and knew that defendant contemplated platting his land, and intended to run a street between 20 acres that he owned there, which would take half the highway off from the 10 acres to be sold. It also appeared that the street had already been partially laid out by defendant. Anderson testified that plaintiff came to him, and offered to sell him the south half of lot 5, and asked him $17,000 for it.

"I told Mr. Hannan that I thought I would accept the property at $17,000, if he could get it. I told him to get me an option on the property."

Mr. Hannan went away, and came back and said that Mr. Fisher had now concluded that he would only sell 150 feet front, which would be about 9 acres.

"I told him he had better get an option from Mr.

Fisher on the best terms he could, and that I would consider it."

The option was taken, at Anderson's request, in the name of Case, which option he never accepted. On cross-examination, he testified that he never met Mr. Fisher, or came to any terms with him in reference to the property.

" Q. You never accepted any proposition, nor made any proposition that was accepted on one side or the other, finally?

" A. No.

" Q. And this option in writing was made at your suggestion?

" A. Yes, sir; I think so.

" Q. And was not that option asked by you because you wanted to know definitely what the proposition was, because there was some disagreement as to what you were getting, and what you were to pay for it?

" A. Well, I wanted that to give me time to consider it. I did not know but what I might accept it after all.

" Q. And that was the first proposition that you ever got from Mr. Fisher?

" A. The first one that I ever saw any writing about.

" Q. Prior to that time, as I understand you, nothing definite was completed?

" A. Nothing was completed."

He further testified, in answer to questions put by counsel for plaintiff, that he intended to take the 10 acres if he could get it for $17,000. The same counsel also asked him on redirect examination:

" Q. Is it not a fact that you told Mr. Hannan that if he could get you that 10 acres for $17,000 you would take it?

" A. I don't know that I can answer that question exactly categorically, but that is my recollection that I told him that I would take the property at $17,000,—10 acres of land."

Counsel for defendant then asked him:

" Q. Was not that the time that you told him you wanted it in writing, when you told him you thought you would take it? If I remember, your first testimony was that you thought that you told him there that you would accept the 10 acres at $17,000.

" A. Yes, sir.

" Q. And that thereupon you asked him to get the proposition in writing?

" A. Yes, sir; and I did so."

Anderson also further testified:

" Q. Why did you ask for this option, if you understood that that proposition had been made to you and had been accepted by you?

" A. I wanted to get it in writing so that I would know exactly what I would get.

" Q. Then, didn't you think that there was some uncertainty as to what the proposition was?

" A. There was this question: The one reason why I wanted that option in writing was this, I wanted to know whether Mr. Fisher would insist on that right of way being put down on the south side of his property, between the two ten acres,—between his two ten acres, that is, between the part that he retained and the part that he sold.

" Q. You knew, then, that in the proposition which Mr. Hannan submitted to you Mr. Fisher contemplated a highway there, and the proposition was based upon such an idea?

" A. I inferred that he did, but I did not want the highway there.

" Q. And that is why, because that you inferred that that was the basis of his proposition, that you wanted it in writing?

" A. I wanted it in writing so that if he insisted on that highway being put where he is now contemplating—

" Q. And where he contemplated then?

" A. The property would be no use to me.

" Q. I suppose that you inferred that Mr. Fisher would insist upon the highway going there, simply on account of the size and position of his own property?

" A. Yes, sir."

It is plain to me from the whole of Anderson's testimony that he never agreed to purchase the ten acres at

$17,000. He told the plaintiff that he thought he would take it, but he knew well enough that the situation of Fisher's land was such that he would not be likely to sell the whole 10 acres, and would reserve enough for half of the street that would be necessary in order to plat the remaining land owned by him. He therefore required a written proposition before he would accept the plaintiff's offer to sell. And after the option was secured for the 9 acres, he did not know but he might buy it, but did not, and subsequently sold his own lands, adjoining Fisher. The plaintiff could not show that he procured a purchaser, and was entitled to his commission, by the testimony of Anderson that he intended to take the 10 acres for $17,000 if he could get the whole of it, untrammeled by any conditions. There must have been a clear, plain acceptance of plaintiff's offer at the time by Anderson. Instead of that, Anderson thought he would take it, but wanted a written proposition from Fisher before he accepted the offer. The written proposition to sell the 10 acres never came, and the offer was never accepted. But plaintiff and Anderson together, abandoning the idea of getting the 10 acres, procured an option from Fisher of the 9 acres in Anderson's interest, but in the name of Case, because Anderson did not wish Fisher to know that he was concerned in it. This option expired, and was not accepted. Then Fisher, on his own motion, sold to other parties.

The judgment must be reversed, and a new trial granted, with costs of both courts to defendant.

The other Justices concurred.