88 299
103 12

88 299
110 701

SAMUEL J. KELSO v. FREMONT WOODRUFF.

*Factors and brokers—Right to commission on sale of real estate—Practice in circuit court—Directing verdict.*

1. A defendant who has not rested his case cannot except to the refusal of the court to direct a verdict in his favor; citing *Clow v. Plummer*, 85 Mich. 550, and cases cited.

2. The question whether plaintiff was the procuring cause of the sale on account of which he seeks to recover a commission of $100, which he claims the defendant agreed to pay him if he found a purchaser, is held to have been, under the evidence, a question of fact for the jury.

Error to Wayne. (Gartner, J.) Argued October 27, 1891. Decided November 13, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Chamberlain & Guise,* for appellant, contended:

1. An agent, in order to recover commissions on the sale of real estate, must show that he procured a purchaser, and from him an unqualified acceptance of the offer of sale; citing *Hannan v. Fisher*, 82 Mich. 208; *Ellsmore v. Gamble*, 62 Id. 543; *Sibbald v. Iron Co.*, 83 N. Y. 378; and it is a part of the risk he assumes that, failing himself, others may be left to some extent to avail themselves of the fruit of his labors; citing *Wylie v. Bank*, 61 N. Y. 416; *Warren v. Powder Co.*, 9 N. Y. Supp. 842; *Powell v. Lamb*, 1 Id. 431; *Chandler v. Sutton*, 5 Daly, 112; *Bennett v. Kidder*, Id. 512; *Dennis v. Charlick*, 6 Hun, 21; *Schwartze v. Yearly*, 31 Md. 270; *Vreeland v. Vetterlein*, 33 N. J. Law, 247; *Lane v. Albright*, 49 Ind. 275; *Lloyd v. Matthews*, 51 N. Y. 132.

*Charles Flowers,* for plaintiff.

MORSE, J. The plaintiff sued defendant for $100, and obtained judgment in justice's and circuit court.

His claim is based upon the following facts: William

H. Stevens had the apparent title to certain property in the city of Detroit, which he obtained by sale under a chattel mortgage given him by Baker & Shefferly. The property consisted of machinery and fixtures used in a sash, door, and blind factory and planing mill. Stevens took possession of it, putting the defendant in charge. Plaintiff was employed as a book-keeper for Stevens. At the time the contract was made between plaintiff and defendant, the indebtedness from Baker & Shefferly to Stevens had been reduced to $2,300. The plaintiff testifies that defendant had been advertising the property for sale, but with no success. Plaintiff said to him that he thought he could find a purchaser. Defendant said, "Well, go ahead." Plaintiff replied: "Mr. Woodruff, of course I cannot do such a thing as this on my salary for working in the office. I shall charge you something extra for that." Defendant said, "How much will you charge?" Plaintiff answered, "$100;" to which defendant replied, "That is all right; you get me a purchaser, and I will pay you $100." No price was agreed upon at which the property should be sold. Plaintiff swears that this agreement was made with defendant personally, and not with him as the agent of Stevens, and that he supposed defendant was interested in closing the matter up so as to get his fees; defendant being an attorney at law, and having foreclosed the mortgage. Defendant also told him that he wanted to have the property sold to get his pay out of the matter. Plaintiff then made efforts to get a purchaser, and finally went to Essex Center, in Canada, about 20 miles from Detroit, and induced one Lang, of Lang Bros., to come up and look at the property, and then turned him over for negotiations with the defendant. Defendant asked $5,000 cash, and Lang said "that was enough," and went away, declining to purchase at that price. Afterwards plaintiff

learned that Lang Bros. had purchased the property, paying $2,700 for it. He then demanded the $100 of defendant, who refused to pay it.

Plaintiff put Lang upon the stand as a witness, who, upon cross-examination, testified that when defendant asked him $5,000 cash for the property he dropped the matter from that moment, and gave up all idea of purchasing it. He finally became the purchaser in this way: Mr. Eastwood, of Bay City, came down to see him some time in July. (It was in the fore part of June when he looked at the property on plaintiff's solicitation.) Eastwood wanted Lang to make an offer for the property, and said that he had the business with one Smith. Lang went up again, and looked the property over, and made an offer, which was not considered, and returned home. Eastwood came down to see him again, and finally accepted his offer, which was made by Lang for himself and brother. They purchased the property for $2,700, and paid the same to Stevens. He also testified that plaintiff had nothing to do with effecting this sale; that it was done entirely through Eastwood and Smith. The purchase price was paid, $700 in money, and the balance by notes, and chattel mortgage as collateral security to the notes. The Lang Bros. supposed they were buying of Eastwood and Smith, but received their title from Stevens, and paid him for the property.

Upon the close of plaintiff's and Lang's testimony, the defendant asked the court to direct the jury to render a verdict in his favor, which request the court refused. This is assigned as error, but, as the defendant went on and introduced testimony in his own behalf, he must be considered as having waived his exception to this refusal. Not having rested his case when he made his request, he cannot except to the ruling. See *Morley v. Insurance Co.,*

85 Mich. 210; *Clow v. Plummer*, Id. 550; *Denman v. Johnston*, Id. 387; *Hinchman v. Weeks*, Id. 535.

The defendant then introduced testimony tending to show that the contract with plaintiff was to pay him $100 if he found a purchaser of the property at the price of $5,000 in cash; that Lang came to see the property at plaintiff's solicitation, but refused to buy; that after that defendant never saw Lang again, and never heard anything from either of the Lang Bros. until they were in the possession of the property; that defendant left Detroit on the 30th of June, and did not return until Lang Bros. had purchased; that it was understood that, if Stevens sold the property for more than his debt, the balance was to go to Baker & Shefferly to pay the claims of the other creditors; that Baker & Shefferly were owing, Smith $800 and upwards, and he, in connection with Eastwood, procured an option from Stevens on the property for $2,300, and Eastwood went to Essex Center, and procured Lang Bros. to buy the property at $2,700; that Smith and Eastwood supposed the payment would be made in cash, and they would get $400 out of it; that when they found that part of it was to be paid by secured notes, the whole payment was made to Stevens, and they received an agreement from Stevens to pay them the $400, but it has not been paid as yet.

The defendant contends that, upon the whole case, plaintiff could not recover, and that the jury should have been so instructed. The plaintiff claims that he fulfilled his part of the agreement; that he was the "moving cause" of the purchase by Lang Bros.; that the purchase would have been consummated in the first place had defendant not placed an exorbitant price upon the property, and demanded cash payment in full; and that the after-purchase was due to his efforts in the first

place. His counsel argues that the intervention of Smith and Eastwood was a scheme to deprive him of the $100, and that they would never have obtained Lang Bros. as purchasers, except through the knowledge that they gained from his hunting out and bringing Lang Bros. to look at the property with the view of purchasing it.

We think the plaintiff had a right to go to the jury upon the whole case, and that the circuit judge did not err in his instructions. The jury were clearly informed by the court that they could not find for the plaintiff if they found the defendant's version of the contract to be true; and, if they found the agreement as claimed by plaintiff, they must further find that the agreement was made with defendant personally, and that he meant to bind himself personally, and that plaintiff was the "procuring and efficient cause of the sale," in order to bring in a verdict for the plaintiff. The defendant did not claim in his testimony that he made the contract as the agent of Stevens, and his evidence was open to the interpretation that he made it on his own account. The question whether plaintiff was the procuring cause of the sale, under the evidence, was one of fact, and not of law.

We do not think the jury were misled by the reference of the court to Stevens' liability, because the circuit judge, at the close of his charge, said:

"I have referred to the liability of Mr. Stevens under certain circumstances, but, as far as that is concerned, it does not cut any particular figure in the case. Mr. Stevens may be liable under the circumstances, but he is not the defendant in this case. The question, and the only question, for you to determine will be as to the liability of Mr. Woodruff. If he is liable under the circumstances as I have stated them, your verdict will be for the plaintiff; otherwise it will be for the defendant."

Judgment is affirmed, with costs.

McGRATH and LONG, JJ., concurred. CHAMPLIN, C. J., and GRANT, J., did not sit.