## BROOKS *v.* LEATHERS.

|112　463|
|137　¹334|

1. CONTRACTS—CONVERSATIONS—QUESTION FOR JURY.

   Where a real-estate agent claimed that certain conversations with the owner of land constituted a contract whereby he was to receive commissions upon its sale, and the language employed was susceptible of such construction, it was proper to submit the testimony to the jury for them to determine whether or not contract relations were in fact established.

2. REAL-ESTATE AGENTS—COMMISSIONS—EVIDENCE.

   The testimony of a real-estate agent, in an action for commissions, that he had several conversations relative to the purchase of the land with the officers of a corporation in which the person to whom the property was finally sold was a stockholder, that on two occasions the conversations were with the subsequent purchaser, and that he communicated the same to the owner of the property, who shortly afterwards himself effected the sale, raises a question for the jury as to whether the agent's efforts were the moving cause in the transaction, even though the purchaser fails to recall the conversations, or that he was influenced by the plaintiff.

3. SAME.

   A real-estate broker employed to sell land, who negotiates with a corporation for its purchase, is entitled to commissions on a sale made by the owner to one of the stockholders, where the latter was influenced to purchase by the broker's efforts to sell to the corporation.

Error to superior court of Grand Rapids; Burlingame, J. Submitted February 6, 1897. Decided April 27, 1897.

*Assumpsit* by James F. Brooks against Don J. Leathers for commissions on the sale of real estate. From a judgment for plaintiff, defendant brings error. Affirmed.

*Fitz Gerald & Barry* (*Francis A. Stace*, of counsel), for appellant.

*Sweet, Perkins & Judkins*, for appellee.

MONTGOMERY, J.   This is an action to recover commission on a sale of real estate of which defendant was half owner.   It appeared by the testimony offered on the part of the plaintiff that prior to July 18, 1893, plaintiff had been acting as agent for defendant, and that on that date defendant addressed him a note as follows:

"JAMES F. BROOKS, Esq.
   "*Dear Sir:* Inasmuch as there are no prospects of closing a sale through you, to any of your customers, of our Ionia-street property, Mrs. Hastings and myself have given the option for a time to other parties, for the price of $31,000.   We thought best to notify you, so that you may act accordingly.   I remain,
                    "Very respectfully,
                    "DON J. LEATHERS."

The plaintiff's testimony further tends to show that after the receipt of this letter he saw defendant, and asked him if he had placed the property with Bliss & Co., and that he said he had.   Plaintiff then asked him if he had said anything to Bliss & Co. about Clark and Jewell. Defendant replied: "Yes; that is all right.   If you sell it to them, you will get your pay for it."   Plaintiff then went away.   Clark and Jewell were stockholders in the I. M. Clark Grocery Company, and it seems that plaintiff had previously had negotiations with Jewell, acting for the company.   He testifies that after the conversation referred to, and about the 1st of September, he received another offer from Mr. Jewell, which he submitted to defendant, and he further testifies as follows: "Mr. Leathers at that time told me that he thought that if I could get Clark and Jewell to pay them $27,500 for the property, and if I would accept $500 as my pay for selling it, he could induce Mrs. Hastings to sell.   I then told him, right there, that in any event of his selling the property on any proposition that I submitted, that he accepted, I would do the work for $500; that I would sell it for $500; that I was to have that much; and he said, 'All right.'"   Plaintiff further testified that after this,

from time to time, he called upon the grocery company, his negotiations being chiefly with Mr. Jewell, but that during the negotiations he on two occasions talked with Mr. Clark on the subject; that on the last of these occasions he was referred to Mr. Jewell. It also appears that he communicated the talk that he had had with Clark to the defendant. On the 8th day of January, 1894, defendant, Leathers, sold the property to M. J. Clark, who at the time was the holder of one-third or more of the stock of the I. M. Clark Grocery Company. Mr. Clark's testimony as to the manner in which the sale was effected is as follows:

"I had no more idea of buying it, any more than I had of being called here as a witness before this trial commenced. He came in to show me about the land, and finally, before he went out, he said, 'You ought to have that corner down there.' I said, 'That is true, if I could buy it right.' He said, 'You ought to buy it yourself.' Says I, 'All right; may be I will some time, but I don't want to buy it now.' Says he, 'You dassent make me an offer.' I says, 'Yes; I dare make you an offer.' So I made him an offer of $25,000, and he took me up."

The testimony further shows that the property is now being improved for the occupancy of the grocery company. The defendant's testimony contradicts the plaintiff's in several important particulars, and, in addition, defendant testified that, when informed by the plaintiff that the I. M. Clark Grocery Company was a customer, he told plaintiff that he had had previous negotiations with M. J. Clark, and that, if the sale was made to him, he would not be entitled to a commission, as he was the defendant's customer. This was denied by the plaintiff. As the case was put to the jury, the question to be determined was whether he was a customer of the plaintiff. The court charged the jury as follows:

"This is an action to recover a commission of $500 on the sale of a tract of real estate owned by the defendant and another person, and by them sold and conveyed to one M. J. Clark. The plaintiff sets up a special contract

whereby he claims that, if the land was sold to any of his customers, he was to receive from the defendant a commission of $500. It is necessary, therefore, that the plaintiff prove to your satisfaction, by a preponderance of evidence, first, that he made such a contract with the defendant, and that at the time of the sale such contract was still in existence and in full force between them. He must also prove that Melvin J. Clark, the person to whom the land was sold, was one of the plaintiff's customers; and by 'customer' I mean a person who has been found or negotiated with by the plaintiff, and has by the plaintiff's efforts been induced, and has agreed, to purchase the property at a price and on terms satisfactory to the defendant, and that the plaintiff must have been the controlling cause of the purchase by that person; and, if he has failed to prove either of these propositions, your verdict must be for the defendant. * * * A contract with the plaintiff, in the manner claimed by him, would not prevent either defendant or Mrs. Hastings from selling the land themselves; and, if they sold the land to any person not a customer of the plaintiff, he could not recover any commission, and such sale would of itself terminate the contract. If the plaintiff had desired to prevent the defendant from selling the property, he should have made a contract with him to that effect. The arrangement between them does not bind the plaintiff to do anything. He is not bound to search at all for a purchaser, and the defendant did not put it out of his own power to sell the property to a purchaser procured by himself under such circumstances. * * * If you find that the plaintiff was employed to sell the land by defendant, and that, at the time he was first spoken to about selling it, it was said, in substance, that he should not recover a commission if the sale was made to M. J. Clark, then the plaintiff cannot recover. * * * The I. M. Clark Grocery Company, and the stockholders of the corporation, is a different party from M. J. Clark, the individual, and a good-faith sale to M. J. Clark, one of the stockholders, in his individual capacity, would not be a sale to the I. M. Clark Grocery Company; and if a sale was made by Don J. Leathers to M. J. Clark, and was consummated and brought about without any aid, assistance, or influence of the plaintiff materially affecting the sale, then in that case the plaintiff cannot recover."

The jury returned a verdict for the plaintiff, and the defendant brings error. The assignments of error are numerous, but have been grouped under a few heads, and the contentions made by defendant are, mainly:

*First.* That there was no contract shown.

*Second.* That, if it be assumed that the talk between the parties constituted a contract, performance by plaintiff has not been shown.

*Third.* That it was error to permit evidence of the relations of M. J. Clark to the I. M. Clark Grocery Company.

The language employed by the parties in an oral conversation is to be construed by the jury, and, if it is susceptible of a construction which indicates that the minds of the parties have met upon an understanding or agreement, it would be error for the court to withdraw such testimony from the jury. We think there was enough of the conversation testified to by plaintiff to justify the conclusion that the minds of the parties met upon the proposition to employ plaintiff, or at least to compensate him for the services which he might render in furnishing a customer for the property. It is suggested that the plaintiff himself was not bound to do anything. The answer is, if he did not do anything defendant was not bound to pay anything. The promise was conditioned upon his rendering the service.

But it is said that the testimony shows that nothing that the plaintiff ever said or did had any influence on the acts of Clark, and that the sale was not made on any proposition made to plaintiff by him and reported to defendant. This question is not altogether clear, upon the proofs; but we think, in view of all the circumstances surrounding the case, it became a question for the jury as to whether the negotiations which plaintiff had had with the I. M. Clark Grocery Company, including the conversations with M. J. Clark, were a moving cause in effecting the sale. It is true, Mr. Clark's recollection of the transaction is that he was not influenced by anything

the plaintiff had said; but he also failed to recollect, at the time of his examination, the conversations which plaintiff testified he had with him. The jury evidently accepted the plaintiff's testimony upon this branch of the case, and it was within their authority to determine whether in fact the negotiations which Clark had had with the plaintiff resulted in the sale.

We think, also, that it was competent evidence to show the relations of Clark to the grocery company. It is true, the effort of plaintiff was to sell to the grocery company as a corporation; but had Clark, pending these negotiations, said to the plaintiff that the grocery company would not undertake to purchase, but that he would, it could hardly be said that, because he had not been solicited as an individual to purchase, the influence of plaintiff in the negotiations had not produced the result. This is precisely what occurred, except for the fact that defendant intervened, and called the attention of Clark again to the subject to which it had been directed by plaintiff, and added the words, "You ought to have the property for yourself." We think it was for the jury to say whether the influence of plaintiff remained, or whether the sale was effected by defendant independently of him. In view of the fact that plaintiff had had these previous interviews with Clark, and had notified defendant of them, it would not be wholly unreasonable for the jury to find that the suggestion of defendant to Clark that he ought to buy the property for himself was made in view of the previous negotiations, and based upon them. At all events, we think this was a question for the jury; and we think it was competent to give in evidence the relations of Clark to the grocery company, for similar reasons.

Some other minor questions are presented, but an examination of the briefs of counsel has convinced us that no error was committed to the prejudice of defendant.

The judgment will be affirmed.

GRANT, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.