### HEENAN *v.* HARRIS.

BROKERS—COMMISSIONS—GOOD FAITH.

Where, in an action for broker's commissions, the defendant's testimony tended to show that she had fixed the price at one hundred dollars less than the broker claimed, that he had not offered the property at the fixed price to the purchaser but at a larger sum, and that the negotiations had been broken off and a sale at a less price made by the owner, who supposed that the negotiations between the broker and vendee were terminated, the jury is warranted in inferring that the broker's efforts did not procure the purchaser, and were fraudulently intended to secure more than the agreed compensation.[1]

Error to Lapeer; Smith, J. Submitted April 8, 1909 (Docket No. 17.) Decided June 7, 1909.

Assumpsit by Martin J. Heenan against Myrta E. Harris for commissions on the sale of real estate. A judgment for defendant is reviewed by the plaintiff on writ of error. Affirmed.

[1] As to when broker may be considered procuring cause of sale or exchange, see note to *Hoadley* v. *Savings Bank* (Conn.), 44 L. R. A. 321.

*Geer, Williams & Halpin* and *H. W. Smith*, for appellant.

*William T. Hosner*, for appellee.

Blair, C. J. This is an action to recover a commission of $36 alleged to be due from defendant in consequence of her sale of her farm in Lapeer county to a purchaser with whom plaintiff had begun and was carrying on negotiations. Plaintiff is a banker and real estate dealer. He testified: That defendant listed the farm with him for sale on a commission of 2 per cent. That she wanted $2,000, and he did not think she could sell it for that. That the price talked of was $1,900, and no less amount was talked of.

"*Q.* There was no other price mentioned in that talk except $1,900?

"*A.* No, sir; I don't think there was. The next time I had a talk with her was at Dryden, when she came there on this other business with Mr. Mack.

"*Q.* What was that conversation?

"*A.* Nothing very different than only she wanted to know if I had succeeded in selling the farm yet, and I had not at that time."

That, at the time defendant came to see him first, nothing was said as to her having left the place with other dealers for sale. That, among others, he talked with George Harmon about selling the place to him, and Harmon came to see him at his office in Dryden.

"Mr. Harmon said the farm was all right, but it was a little run down, and he thought the price was a little high. I don't think he said how much too high. He didn't make me a bona fide offer on the place at that time."

Plaintiff's cashier testified: That defendant placed a price of either $1,900 or $2,000 upon the farm and allowed plaintiff a commission of 2 per cent. for selling the farm.

"Harmon said he had been and looked at the farm, and it was badly run down, and he did not think he wanted to buy it at that price. Mr. Heenan told him that the farm

was worth it, and he did not know as he could sell it any less. I think that is about all that was said."

Defendant testified: That the first time she talked with plaintiff was at his office in Dryden. That she wanted $2,000 for the farm, but plaintiff laughed at the idea.

"He said I had given too much for it in the first place, and I told him that I would let it go for $1,900, and he said he would try to find a buyer at that price."

The next time she saw him he came to her house and said he had a buyer at $1,900, and she went to his office to have the papers made out, and he told her "that the deal was off, that the man had backed out." That she then told him that if he would sell the place for $1,900 she would give him 2 per cent. commission, "and will also sell it myself if I have an opportunity." That she made the same proposition to Mr. Mack in Heenan's presence.

Mr. Mack testified: That he was present at the conversation in plaintiff's office.

"She said it ought to bring $2,000, but she would take $1,900, and, if she got a chance to sell it herself, she would sell it and pay no commission, and also she offered me the same chance. * * * If he sold it for $1,900, he could have 2 per cent. for selling it, and, if she sold it herself, she would pay nothing."

George Harmon testified: That he looked at the farm at plaintiff's request and then saw him at his office.

"He says: 'I will tell you what I will do. I will call the place $1,960, with the exception of about $5 it will cost to draw the papers. That will make the place $1,965, that is allowing you my commission.' I did not have any talk with him after that. That was all the talk I had with him. About two weeks later I bought the farm and paid $1,800 for it. * * * When I first went to see Mrs. Harris, she asked $1,900 for the farm. I was there I presume about an hour before I bought. Within the hour she came down to $1,800, and I bought the farm. I told her that I had been talking with Mr. Heenan about the farm."

That he could not buy the farm of plaintiff because,

"in the first place, he was asking too much, and the second reason was I wouldn't have bought the farm from him." That he told this to defendant before he bought of her. Mr. Fisher testified: That he was present at the conversation between Heenan and Harmon.

"Mr. Heenan said they wanted $2,000, and George told him he thought it was too much, and Heenan said, to make the sale, 'I will give you my commission and let you have the place for $1,960, and $5 will cover the expense of making the papers, will make it cost you $1,965.'"

Plaintiff testified on rebuttal that, at the time he offered the farm to Harmon for $1,960, the least he was authorized to sell it for was $2,000, and the day she came with Mack was the first time she came down to $1,900, and that he had no talk with Harmon after that day.

Plaintiff's counsel contend that the court should have directed a verdict for plaintiff as requested, and this contention raises the only question which, in our opinion, requires special consideration. The terms of the contract are in dispute. Plaintiff's testimony is that at the time he talked with Harmon the least he was authorized to sell for was $2,000. Defendant's testimony is that at that time he was authorized to sell for $1,900 and had ridiculed her out of asking $2,000. Taking the most favorable view of the testimony for defendant, the jury would be authorized to find: That plaintiff had demanded of Harmon $2,000, less his commission, and either did this to assist defendant by getting an increased price and waiving his right to a commission, or with the fraudulent intent to increase his own remuneration; that on Harmon's stating that the price was too high, and that he would not pay it, the plaintiff did not intimate to him that he might sell for a less sum, but allowed him to depart with the understanding that the price stated was the lowest which would be accepted; that there was no arrangement whatever as to any future negotiations, but all negotiations were concluded at that meeting; that Harmon notified

defendant of his talk with plaintiff and that he would not deal with him; that defendant had a right to believe, and did believe, that the negotiations between Harmon and plaintiff were at an end, and sold to Harmon in good faith. Having permitted Harmon to go away with the understanding that the price asked was the lowest price, knowing that the price was too high, and that Harmon would not pay it, and without any arrangement whatever for further negotiations, it cannot be said, as a matter of law, that any negotiations were pending, or that plaintiff's efforts had procured a purchaser in accordance with his contract. On the contrary, we think the jury would have been warranted in finding that the plaintiff's efforts were contrary to his duty under his contract and were fraudulently designed to obtain more than the agreed compensation. If, as the undisputed evidence discloses, he was offering to throw off his commission on $2,000 merely to aid the defendant, it is difficult to explain why he should be making such strenuous efforts to collect the commission on $1,800.

We are of the opinion that the case was properly submitted to the jury, and that no errors were committed so prejudicial as to require a reversal of the judgment or necessitate further consideration. See *Young* v. *Hubbard*, 154 Mich. 218 (117 N. W. 632).

The judgment is affirmed.

OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred.