WOOD *v.* SMITH.

1. BROKERS—COMMISSIONS—CONTRACTS—EVIDENCE.

Disputed testimony that the plaintiff, a real estate man, interviewed defendant as to the price of his house, and obtained the refusal of it, at two per cent. commission, no price being fixed, that he arranged for an inspection of the house by a prospective purchaser, who subsequently purchased the property directly from the vendor, presents a question of fact for the jury as to the procuring cause of the sale and the broker's right to a commission.

2. SAME.

In order to recover commissions the broker must show that he was the procuring cause of the sale, that the purchaser

learned of the property through him, and bought the property because of his efforts, which must be shown to have been more than a mere introduction of the vendor and vendee.[1]

Error to Wayne; Rohnert, J. Submitted June 20, 1910. (Docket No. 92.) Decided July 14, 1910.

Assumpsit by Ira L. Wood against Joseph N. Smith for commissions on the sale of real estate. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

*Stanton Clarke* and *Arthur D. Prosser*, for appellant.

*Bowen, Douglas & Eaman*, for appellee.

STONE, J. This is an action of assumpsit to recover a commission claimed to be due the plaintiff upon a sale of real estate alleged to have been brought about by him for the defendant. The case was submitted to the jury, and the defendant had a verdict. The plaintiff brings error. The assignments of error are based upon the exclusion of testimony, the refusal to give plaintiff's requests to charge, and upon the charge as given; but the meritorious question is whether the plaintiff was the procuring cause of the sale to one Mrs. Moore, the purchaser.

The plaintiff, a real estate broker, testified that, learning that Mrs. Moore wanted a house, he went to defendant the latter part of May, 1907, to find out if his house was for sale, and if he (plaintiff) could have the refusal of it, and told defendant that he had a customer for the property, and gave the name of Mrs. Moore; that defendant gave plaintiff the refusal of it; that defendant asked what his commission was, and plaintiff replied 3 per cent; that defendant said others had offered to do it for 2 per cent., and that he would not pay 3; that plaintiff made an appointment with Mrs. Moore to see the house the next day;

[1]As to when a real estate broker is considered the procuring cause of a sale or exchange, see *Hoadley* v. *Savings Bank of Danbury* (Conn.), 44 L. R. A. 321.

that the next morning plaintiff went to defendant's house and told him that Mrs. Moore wanted to see the house that afternoon, and that defendant said: "I want you to put her off two or three days; tell her the family is away from home, and that she cannot see it; it will look better after it is decorated;" that plaintiff saw Mrs. Moore, and told her it would be impossible for her to see the property for a day or two; that he said to her: "Mr. Smith will call me up and let me know when you can see the property;" that plaintiff waited two or three days and then called up defendant, who said that Mrs. Moore had made an appointment to see him that afternoon; that plaintiff called up Mrs. Moore, who said she was going up there that afternoon; that plaintiff saw her again that night or the next morning, and she said: "I will give Mr. Smith $13,000 for that place;" that plaintiff said, "That is cheap for it," and she said, "You can go ahead. I will take it at that; he is hard up, I suppose, and he needs the money. You can get the place for me, he wants to sell it bad;" that plaintiff submitted the $13,000 offer to defendant, and he said, "No, I cannot take it, but you go ahead, and if you are any good you can work her up to the price and sell it to her;" that defendant gave it to him at $17,000; that after this interview plaintiff was calling up or seeing Mrs. Moore or defendant often; that Mrs. Moore went to look at the house about June 3d; and that from that time on plaintiff was talking with her and defendant as late as August 2d; at that time he called up Mrs. Moore and asked her if she had found anything yet, and she said "No;" that he then called up defendant, and he said she had bought; that a few days after August 10th plaintiff met Mrs. Moore, and she told him she had closed the deal—had bought the Smith property. Then he called up defendant and asked for his commission.

When defendant said the house was for sale at $17,000, he put no restrictions on the selling price or sale, he simply gave the place to plaintiff to sell it; plaintiff had

no contract in writing, nor power of attorney; that defendant did not reserve the right to sell the place himself at a less price than $17,000, and made no reservation; that defendant swore in justice's court that he sold the place for $14,500; that defendant did not tell plaintiff that the place was in the hands of other real estate men; he said others had offered to do it for 2 per cent. Mrs. Moore never offered plaintiff more than $13,000 for the place. Defendant never authorized plaintiff to sell for less than $17,000; that plaintiff had been at Mrs. Moore's house on other deals. Plaintiff did not take Mrs. Moore to defendant except in name. She was considering other houses all of the time. All plaintiff did was to do telephoning and go and see them. He claimed that he got the two parties together, and that they closed the deal when he was working and talking between them; that defendant testified in justice's court that plaintiff was the only one that ever mentioned Mrs. Moore to him; that the property was not at any time withdrawn from his list.

On behalf of defendant, Mrs. Moore testified that plaintiff never came to her house; that the first time she ever heard from plaintiff concerning the sale of defendant's house was over the phone; he asked her if she had seen the house, and she replied she had; that she first heard of defendant's house being for sale through Mr. and Mrs. Candler; Mr. Hunter asked her if she had seen it; plaintiff never called at her house personally to sell her the defendant's house; that the only time he was there he never mentioned it; that she never offered him a cent for this house, because she was negotiating with Mr. Hannan for a house on Ferry avenue; she had offered $13,000 for that house, but could not get it for that, and she agreed to pay $15,000, and close the deal; that was the Hayes house, and she thought she had bought it. After she thought she had closed that deal, she never carried on any negotiations with defendant for his house. In her negotiations with defendant she did not remember who took the initia-

tive. It was some time in the latter part of July that she decided to go and see the house again. When she first saw the house defendant did not show her the whole house, and she went to the house again. Before plaintiff said anything to her about the Smith house she had seen it, but not all of it, so she went up and had defendant show her the whole house.

Some time in July she wrote defendant and asked him if his house was still for sale, and if so to come and see her. He came down and she offered him this amount for it. He wanted $17,000, and she was not willing to pay that much. The first time she went there she thought he asked her $17,500. She let him know that she had no idea of purchasing for that. In the deal in July with defendant, she never mentioned plaintiff in the transaction. She had no reason to. She would not have purchased the property through plaintiff. She did not want it then. She decided later that she would take it. The plaintiff never took her to see the property; he never went over to see defendant at all. He did telephone her about the Hayes house; he wanted to try and sell that. She told him that he could not sell it; that he had no right to do it; that he could not get a commission; that Mr. Hannan and she were negotiating about that, and he said that he would look out for the commission; that she need not worry about that. She did not remember anything of the kind; that he was telephoning her, only about—he never told her about the Smith house, but he telephoned her about the Hayes house. She could not tell when she first learned that the deal on the Hayes house had fallen through. Mr. Smith and she came to an agreement with regard to this place the latter part of July; he wanted $17,000. She first offered him $14,500; that was the only offer she ever made. She told him if he could not take that, all right; if he would take it he might have it. Later on he informed her that he accepted that offer; that was the only offer she ever made him. On the occasion of her only interview with defendant relative to this

property, they did not agree to conceal the fact that they had made a contract and the terms of it. She told him she did not want—he need not say what she paid for it. Nothing was said about commission. She did not remember whether the plaintiff mentioned the Smith house to her except when, subsequently to the sale, he asked her if she had bought a house. He never tried to sell her the Smith house. He told her about it. She said she had seen it and did not want it. He did not try to sell it to her; just mentioned it to her. He did not ask her what price she would give for it.

The defendant testified that he advertised the house for sale, and that the plaintiff was among the number that spoke about it. He wanted defendant to allow him to sell the place and defendant asked him what commission, and he said 3 per cent.; that defendant said he would not pay it, and he wanted to know why, and defendant told him that several others had offered to take it at 2 per cent. Defendant told plaintiff the house was in the hands of no person in particular, and would not be; that there was no exclusive agent; that the party that sold the place, did the business, and closed the deal would be the party that would get the commission, and that defendant would pay but one person. Mr. Wood telephoned Mrs. Moore's name after that, but not at that time. He never brought her to look at the place; he never introduced her to defendant; he never made a sale of the house. Defendant asked $17,000 for it. Plaintiff never communicated any offer from anybody to defendant. He did communicate an offer of $13,000 from Mrs. Moore for the house. Defendant saw plaintiff but once, and that was when he came to defendant's office; that was the last of him. He did communicate with defendant in some form about Mrs. Moore; he wanted to make an appointment for her to call. She did not come. She had been to defendant's house before that—before this transaction. Defendant next heard from Mrs. Moore in connection with the sale of the house; it must have been the latter part of July that he received

a letter. She wrote him about the house, asking if it was still for sale. He called her by phone and made an appointment to see her, and saw her. Later on the house was sold to her for $14,500. The sale must have been between the middle and latter part of July. The transaction was closed on August 14th.

It is not true that plaintiff was continually telephoning defendant, and working between him and Mrs. Moore during June and July. Defendant remembers that plaintiff came to see him once; plaintiff phoned defendant once about Mrs. Moore's offer of $13,000. That was early in June. It was soon after the first call, probably a week or ten days, and that was the last he heard from him. At no time did Mr. Wood bring Mrs. Moore to defendant, he never brought her to look at the house, and never made a sale for defendant at all. When defendant refused to take the $13,000 Mr. Wood urged defendant to let him have another trial to see if he could not get a better offer, and defendant asked him how long he would want, and he said he would do it right away, and defendant said if he would take care of it in a day or two, he could go right ahead, and defendant never heard any more of it. After that it is not true that Mr. Wood frequently communicated with defendant by phone with regard to negotiations concerning this place. He does not know that Mr. Wood telephoned him after that. Mr. Wood was the first agent with whom defendant had placed the property to bring Mrs. Moore to defendant's attention as a buyer. Mrs. Moore did not come to see defendant's property by appointment made with Mr. Wood. She saw the property two or three weeks, perhaps longer, prior to the time the offer of $13,000 was made. Mr. Wood phoned it to defendant. Defendant did not tell Mr. Wood that he (the defendant) reserved the right to sell the place at less than $17,000 to anybody that he might bring. There was no appreciation in the value of the place from the time defendant authorized Mr. Wood to sell it, until it was sold, and defendant does not state that there was any deprecia-

tion.  When Mr. Wood conveyed the $13,000 offer to defendant he gave him a day or two in which to get a better offer.   That was all there was to it, except that defendant told him that, if he could not do any better than that, to drop the deal, and plaintiff said he would like the privilege of making another offer, or getting Mrs. Moore to make another offer; defendant told him if he would take the matter up right away, within a day or two, and secure another offer, defendant would give him the opportunity.

We have made this extended extract from the testimony to show that there was a question of fact for the jury, and that it would have been error had the court directed a verdict as requested by the plaintiff.   We find no error in the rulings of the court upon the admission of evidence.

We have already said the meritorious question is whether the plaintiff was the procuring cause of the sale to Mrs. Moore.   This was clearly a question for the jury under the evidence.   We have examined the assignments of error based on the refusal of the court to give plaintiff's requests to charge.   The court did not err in refusing the requests.

The 18th assignment of error is based upon the following summary of the charge:

" Now, gentlemen, to summarize the proposition again : In order to find for the plaintiff, you must find that he was the procuring cause.   It is necessary for the plaintiff to show you, either that he introduced Mrs. Moore to this property, or, in other words, he was the first to call Mrs. Moore's attention to this property; that Mrs. Moore was his customer, and that he initiated the negotiations, and that by reason of that negotiation and that introduction the negotiations were acted upon; the introduction was acted upon by Mrs. Moore and the negotiations were brought by reason of that introduction as a procuring cause to a successful and satisfactory conclusion between Mrs. Moore and Mr. Smith.   Or, he must show you, if he did not introduce Mrs. Moore, that it was through his active negotiations that final satisfactory arrangement was

reached between Mrs. Moore and Mr. Smith. Now, by active negotiations is meant, not a single introduction, not a single calling attention to, but carrying back and forth propositions, etc., which would result in a conclusion satisfactory to both parties. If he did not introduce Mrs. Moore to this property, but Mrs. Moore's attention had been called to the property before that, and was not active in carrying back and forth propositions, and in inducing Mrs. Moore to purchase this property by such negotiations, then he cannot be said to be the procuring cause. If it should appear to you that Mrs. Moore had been introduced to this property before Mr. Wood was known in the transaction, and had her attention called to it as a purchaser, and that incidentally Mr. Wood had called her attention to it; that she had authorized the proposition; he carried that proposition and that then the negotiations ended; and that afterwards Mrs. Moore, after the interval of a time Mrs. Moore went back and conducted her own negotiations for the purchase of the property—then Mr. Wood would not be the procuring cause.''

We find no error in the charge, but that it correctly states the law and is supported by our own decisions. The first proposition, that, in order to recover, the plaintiff must show that he was the procuring cause of the sale; that the purchaser learned of the property through him; and that through his efforts a sale was made—finds support in the cases of *Thuner* v. *Kanter*, 102 Mich. 59 (60 N. W. 299); *Douville* v. *Comstock*, 110 Mich. 693 (69 N. W. 79); *Brooks* v. *Leathers*, 112 Mich. 463 (70 N. W. 1099); *Antisdel* v. *Canfield*, 119 Mich. 229 (77 N. W. 944).

We cite in support of the charge the following cases: *Scribner* v. *Hazeltine*, 79 Mich. 370 (44 N. W. 618); *Hannan* v. *Fisher*, 82 Mich. 208 (46 N. W. 225); *Kelso* v. *Woodruff*, 88 Mich. 299 (50 N. W. 249); *Young* v. *Hubbard*, 154 Mich. 218 (117 N. W. 632); *Heenan* v. *Harris*, 157 Mich. 187 (121 N. W. 741).

We have examined the following cases cited by plaintiff: *Heaton* v. *Edwards*, 90 Mich. 500 (51 N. W. 544); *Decker* v. *Widdicomb*, 137 Mich. 331 (100 N. W. 573); *McGovern* v. *Bennett*, 146 Mich. 558 (109 N. W. 1055);

*Reade* v. *Haak*, 147 Mich. 42 (110 N. W. 130). In our opinion, these cases are not applicable, under the evidence in this case.

We find no error in the record, and the judgment of the circuit court is affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, and BLAIR, JJ., concurred.