KINSEY v. BARTH.

1. BROKERS—COMMISSIONS—PROCURING CAUSE.
   In an action by a broker to recover commissions for the sale of real estate, he must show, by a preponderance of the evidence, that he was the procuring cause by which the sale was finally effected, in order to recover.

2. SAME—BURDEN OF PROOF—INSTRUCTIONS.
   The burden of proof being upon plaintiff to establish that the sale was made by him, it was erroneous for the court to instruct the jury that the defendant must show by a preponderance of the evidence that the sale was made by some one else.

3. SAME—EXCLUSIVE AGENCY—PROCURING CAUSE.
   Where, in such action, the broker has no exclusive sale of the property, he does not become entitled to a commission merely by bringing the property to the attention of the purchaser, but he must show that his services were the effective means of bringing about the sale.

4. SAME—COMMISSIONS—PROCURING CAUSE—INSTRUCTIONS.
   And where the broker abandoned all effort to sell the

property without even inducing the purchaser to go to look at it, and the latter testified that he was not induced to look at it by anything plaintiff said or did, and had dropped it from his mind and would not have purchased it except for subsequent independent action of his son, it was error for the court to substantially instruct the jury that the broker had earned his commission by being the first to call the attention of the purchaser to the property, disregarding the purchaser's testimony as to the procuring cause of the sale.[1]

Error to Kent; Brown, J. Submitted January 6, 1916. (Docket No. 45.) Decided July 21, 1916.

Assumpsit by William H. Kinsey and another in justice's court against Jacob Barth. Judgment for plaintiffs, and defendant appealed to the circuit court. Judgment for plaintiffs. Defendant brings error. Reversed.

*Eastman & Eastman,* for appellant.

*Cornelius Hoffius,* for appellees.

PERSON, J. Defendant owned a home, numbered 407, on Second street, in the city of Grand Rapids, and on the 12th day of August, 1911, conveyed it to one Burt H. Fry. The plaintiffs, who are real estate brokers in the city, bring this action to recover a commission for the sale, upon the ground that it was effected through their firm. They obtained judgment, first in justice's court, and then in the circuit court, and the latter judgment is brought to this court by writ of error, for review.

Plaintiffs claim that the sale was brought about by an agent of theirs, a Mr. Van Steensel. This agent testifies that he was employed by defendant to make

---

[1] The cases passing on the question as to when real estate broker is considered as procuring cause of sale, are reviewed in a note in 44 L. R. A. 321 *et seq.*

the sale, and that the rate of commission was agreed upon between them. This was denied by defendant, but the question of employment was submitted to the jury, under proper instructions, and their determination of that matter must be held conclusive upon this record.

The important issue in the case is whether the plaintiffs, through their agent, Van Steensel, were the procuring cause of the sale. The facts in this connection, as averred by plaintiffs, are as follows: Van Steensel, hearing that Mr. Fry, the purchaser, wished to buy a house, called upon him and learned the location and character of the property desired. He then made search for such a house, and found it, as he believed, at 407 Second street. This was the house owned by defendant, and which Mr. Fry subsequently purchased. Van Steensel, after finding the house, made the arrangement with defendant by which he was to have a commission for selling it, and went back to Mr. Fry. Mr. Fry promised to go with him to see the house, but never did. These transactions took place on the 12th and 13th of July, 1911. Mr. Van Steensel did not, in his talk with defendant, give the name of the expected purchaser; nor did he tell Mr. Fry the name of the owner of the house, but he did give him its street and number. Van Steensel says that his last call upon Mr. Fry in trying to sell him the house was on July 27th. Before that he had talked with Fry several times over the telephone, and had also, he says, talked with defendant in the same way. But he had seen defendant personally only the one time. After the 27th day of July, Van Steensel seems to have made no further attempts to effect a sale. He did not know that Fry had purchased the place until about the 28th day of October, and then he learned of it through casually meeting Fry on the street. Upon learning that the house had been sold to

Fry, plaintiffs demanded their commission from defendant. Fry testified that after his second meeting with Van Steensel, which was on July 13th, he decided, for certain reasons which he was not allowed to state, that he would not purchase the house in question, or any house, through Van Steensel's agency. That, he says, is the reason he never went to look at the house when requested by Van Steensel. The way he did come to purchase the house, he says, was through his son, John Fry, who made an arrangement for him to meet Mr. Barth, the defendant, and look at a house owned by the latter. Van Steensel had never mentioned Mr. Barth's name, and Fry says that he did not know it was the house Van Steensel had tried to sell him until he saw the number on it. He also testified that defendant asked him if he was sent to look at the house by any agent, to which he replied that he was not, and that he, in turn, asked defendant "if the young man from Kinsey & Buys had anything to do with the house," and that the defendant answered, "No." Mr. Fry further testified that he would not go to see the house at Van Steensel's request; that he would not have purchased it at all if it had been necessary that the purchase be made through Van Steensel, and that the Van Steensel proposition had been dropped entirely from his mind when, at his son's request, he went to meet defendant. John Fry, the son, testified that he saw an advertisement that the house was for sale in a newspaper; went to see it; and made an appointment for his father to meet the owner.

The instructions given by the court to the jury, on the trial, were, for the most part, clear and correct. The jury were told that, in order to recover, plaintiffs must show—

"by a fair preponderance of evidence that it was by reason of their contract of agency and through their

means and efforts that Mr. Fry was found and the sale finally made. In other words, they must satisfy you that they were the procuring cause, or chief means, by which this sale was finally effected."

And in regard to the testimony of Mr. Fry that he was brought to look at the house by his son and not by Van Steensel, the court said:

"Now, if you are satisfied from a fair preponderance of the evidence that Mr. Fry abandoned all idea of looking up the property that Mr. Van Steensel called his attention to, and that he was led to examine the defendant's property through other and independent means, and that he finally purchased without any effort on the part of the plaintiffs, and did not buy the property as a result of their calling his attention to it, then I charge you that the plaintiffs cannot recover, and your verdict must be 'no cause of action.'"

Fault could not well be found with these portions of the charge, except as to what was said in the paragraph last quoted about the preponderance of evidence. That was erroneous. The burden of proof was upon plaintiffs throughout to show that the sale was procured by them, and not upon the defendant to show that it was procured by some one else.

But, after giving the foregoing instructions, and other instructions pertinent to the case, the court, near the close of his charge, used the following language:

"And so in this case, if you believe the testimony of Mr. Fry that he called Mr. Barth's attention to Kinsey & Buys, or their agent, in connection with the deal, and you further believe that such a verbal agreement and understanding for the sale of the place was entered into between Mr. Van Steensel and Mr. Barth, as testified to by Mr. Van Steensel, then I charge you that Mr. Barth cannot escape liability in this case, and your verdict would be in favor of the plaintiff. * * * It being undisputed in this case that Mr. Van Steensel first spoke to Mr. Fry, the buyer, and first called the Second street property to Mr. Fry's

attention, even though no bargain was then struck and the negotiations were permitted to rest for a while, if then Mr. Barth did not revoke his agreement with Kinsey & Buys, made through Van Steensel (if you believe such understanding was had between the parties), then I charge you that when Mr. Barth later completed the sale, the plaintiffs would be entitled to their commission, even though other parties may have assisted in bringing about the sale."

This was incorrect under the circumstances of the case, and inconsistent with the earlier portions of the charge. It amounted substantially to an instruction that Mr. Frÿ's testimony should be disregarded as to the cause of his purchase, and that a broker has earned his commission by being the first to call the attention of the purchaser to the property.

It may be, and no doubt is, true that a sale is often effected by simply bringing the property to the buyer's attention; but it is not because he brought the property to the buyer's attention that the broker is entitled to his compensation, but because by doing so he became the procuring cause of the sale. *Wood* v. *Smith*, 162 Mich. 334 (127 N. W. 277), and cases there cited; *Wylie* v. *Bank*, 61 N. Y. 415; *Studer* v. *Byson*, 92 Minn. 388 (100 N. W. 90). As was said in *Whitcomb* v. *Bacon*, 170 Mass. 479, 481 (49 N. E. 742, 64 Am. St. Rep. 317):

"A broker who does not have the exclusive sale of real estate does not become entitled to a commission merely by bringing the property to the attention of the person who finally buys it, but he must also show that his services were the efficient or effective means of bringing about the actual sale."

In the instant case it is not claimed by plaintiffs that they had any exclusive right to sell the property. Their agent, Van Steensel, apparently abandoned all effort, on and after the 27th day of July, to get Fry to even look at the property. He did not learn that a

sale had been made until the 28th of October, and then only through a chance meeting with Fry. And if it is true, as Fry testified, that he was not induced to look at the property by anything Van Steensel said or did, and had dropped it from his mind, and would not have looked at or purchased it, except for the subsequent, independent action of his son, then Van Steensel was not the procuring cause of the sale, even if he did first call Fry's attention to the property, and plaintiffs are not entitled to any commission.

For the errors pointed out, the judgment is reversed and a new trial granted, with costs to appellant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.