McOMBER *v.* CAMPION.

1. BROKERS—COMMISSIONS—WHEN EARNED.

It is not necessary that a real-estate deal be completed before a broker earns his commission; but when he produces a customer who is ready, willing, and able to purchase the premises on the owner's terms, the commission is earned.

2. SAME—ACCEPTANCE.

Where the broker's customer accepted the owner's terms, the mere fact that his acceptance was not complete before the owner sold to another party would not defeat the broker's right to his commission.

3. SAME—OWNER MAY NOT SELL TO BROKER'S CUSTOMER.

An owner's right to sell the premises notwithstanding an exclusive listing with a real-estate broker, does not extend to a customer called to the owner's attention by the broker.

Error to Berrien; White (Charles E.), J. Submitted June 14, 1922. (Docket No. 6.) Decided July 20, 1922.

Assumpsit in justice's court by Graham O. McOmber, doing business as McOmber & Company, against Lillian Kenyon Campion for commissions on the sale of real property. There was judgment for plaintiff, and defendant appealed to the circuit court. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Charles H. Kavanagh,* for appellant.

*John J. Sterling,* for appellee.

BIRD, J. Plaintiff is a real estate dealer in Niles.

Defendant resides in Benton Harbor, and in 1919 was the owner of a house and lot in Albion. She listed the house and lot with plaintiff for sale under the following contract:

"City Property for Sale or Exchange.
"Property in Albion, Mich. Lot 52x132 to a ....ft. alley 52 front on Albion St., No. 200 Albion St. House 2 story frame house on concrete block foundation, pine finish, 8 rooms, well built six yrs.   Street paved with no paving.   Sidewalks in front.   Street car lines........Improvements, water, gas, electricity, sewer.
"Remarks..................
"Buildings insured in........Insurance Company, of...........through the agency of.........Insurance expires..........Amount of insurance $......
"Incumbrance, $1,180.00, interest at 6 per cent. per annum;.............. of .............. Mortgagee. When due—10 yrs.   Title in name of Mrs. J. Campion.
"Will trade for...........
"Price, $2,000.   Terms, $400 or $500 down, bal. $20 Monthly—Int. 6% on deferred payments.

"Niles, Mich., June 24, 1919.
"McOmber and Company:
"I desire you to sell for me the above described property at the price and terms named, or at any other price or terms I may approve, and if you sell or exchange same, or any part thereof, or refer a customer or customers to whom I shall sell or with whom I shall exchange, or if attention is called to said property through your influence in any way, directly or indirectly resulting in any sale or exchange, or if you introduce me to, or bring me in contact with, a customer or customers ready, willing and able to buy or exchange on said terms, I agree to pay you any sum secured over and above $2,000 as commission.
"In consideration of your acceptance of this agency and contract and using your efforts in its behalf you are hereby constituted sole agent for said sale or exchange, and when it is disposed of your commission shall be to the exclusion of all other agencies and negotiations whatever.

"If required by the purchaser, I agree to furnish a complete, merchantable abstract of title to said property made by a professional abstractor, brought down 'to date' and showing clear title in seller, it being understood that failure so to do shall not deprive you of your commission herein mentioned.

"This contract shall terminate at the expiration of one year from its date, but I may cancel same at any time prior thereto by giving you ten days' written notice thereof, it being understood, however, that said termination or cancellation shall not deprive you of your commission for services actually rendered or performed before said termination or cancellation.

"Mrs. LILLIAN CAMPION, Owner.
"Address, 507 Edward Ave.
"Benton Harbor, Mich.
"Dated June 24, 1919.
"Accepted: McOMBER & COMPANY,
"Per GRAHAM O. McOMBER."

Plaintiff at once advertised the premises for sale in the Albion Recorder. The advertisement came to the attention of Harry Stancroff and he wrote plaintiff inquiring the terms of sale. Correspondence followed. Finally Stancroff offered to pay $2,200 for the premises, $400 down and $20 a month. Plaintiff sent him a telegram that he could have it on those terms. Before the deal was closed defendant sold the premises to one Adams, a resident of Albion, for $2,000. She then refused to pay plaintiff his commission. At the close of the plaintiff's proofs a motion was made by defendant for a directed verdict. The trial court granted the motion on the ground that defendant herself sold the premises before plaintiff produced a person who was ready, willing and able to purchase them.

The contract between the parties gives plaintiff the sole agency for a sale of the premises for one year unless canceled by defendant under a ten days' notice, and makes his commission depend on the excess received over $2,000. As soon as the contract was ex-

ecuted plaintiff advertised the premises for sale. This brought him in touch with a customer who was ready, willing and able to make the purchase. Plaintiff communicated this fact by telephone to defendant and advised her who the party was, and she replied that she was going to Albion in a few days and would stop at Niles and see him. Before she went plaintiff got another offer, a cash offer for $2,000. He called defendant by telephone and communicated this fact to her and indicated, in substance, to her that if the cash were an inducement to her she could accept it, but if she did she would have to look after his commission. After learning from plaintiff that the cash offer was made by Mr. Adams of Albion, she went and closed the deal with him for $2,000. Now it is insisted that, because defendant closed the Adams deal before the Stancroff deal was ready to close, plaintiff must lose his commission.

We cannot agree with this view. It was not necessary that the deal should be completed with Stancroff before plaintiff had earned his commission. *Blakeslee* v. *Peabody,* 180 Mich. 408. When he produced a party who was ready, willing and able to purchase the premises, his commission was earned. It appears from Stancroff's letters and his testimony on the trial that he was willing to purchase the premises for $2,200, $400 down and $20 per month. This sale would have netted plaintiff $200 commission. Defendant knew this before she sold to Adams. In fact, she would not have known of Adams' offer except for plaintiff telling her. It will hardly do to say that the plaintiff is not entitled to his commission because defendant sold to Adams for $2,000. Plaintiff advised defendant of the Adams offer, as was his duty to do, and it was put up to defendant in the nature of a substitute for the Stancroff offer, if she desired the cash bad enough to pay his commission.

But defendant argues that this case is controlled by the holding in *Hannan* v. *Fisher*, 82 Mich. 208, which holds there must be an unqualified acceptance of the offer which the agent was authorized to make. This can be no bar to recovery in this case as Stancroff did accept the terms of sale stipulated in the contract. The mere fact that his acceptance was not complete at the moment defendant sold the premises to Adams would not deprive plaintiff of his commission. His contract gave him the sole right to make a sale for one year. This contract had not been canceled and he was not obliged to make the sale at any particular time within that period. But counsel says the contract did not prevent defendant from making a sale of the premises. This is perhaps true, but it prevented her from making a sale to Adams because Adams had been called to her attention by plaintiff. The case that defendant cites makes this distinction:

"It is well settled that the giving of an exclusive agency to sell real estate does not preclude the owner from selling within the life of the contract to *one who he has reason to believe has not been procured by the agent*." *Roberts* v. *Harrington*, 168 Wis. 217 (169 N. W. 603, 10 A. L. R. 810).

The facts shown here bring the case within the exception mentioned in the case cited. Plaintiff communicated to defendant the fact that Adams had offered $2,000 cash. The probabilities are she would have known nothing of Adams' offer had not plaintiff advised her.

Plaintiff's proofs showed conclusively and without contradiction that plaintiff had secured a purchaser who was ready, willing and able to purchase the premises on the terms prescribed in the contract between the parties. Defendant was not sworn on the trial and she offered no proofs. We think, as the testimony stood at the close of the case, the trial court

should have directed a verdict for plaintiff for the amount of his claim with interest thereon.

The judgment is reversed and a new trial ordered, with costs of this court to plaintiff.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.