DOUVILLE *v*. COMSTOCK.          110  693
119  237

1. REAL-ESTATE AGENTS—RIGHT TO COMMISSIONS.

To entitle a real-estate broker to his commissions for effect-
ing a sale, it is not necessary that he be present at the
sale, but his efforts must be the procuring cause of the sale.

2. SAME—SALE THROUGH THIRD PARTY—AGENT INTERESTED AS
PURCHASER.

A real-estate broker authorized to sell land, but not hav-
ing an exclusive agency, is not entitled to commissions on a
sale made by the owner directly through another broker, be-
cause the latter had previously had correspondence with the
first broker respecting a sale of the land and a division of the
commissions, and the purchasers were the same persons with
whom the second broker negotiated during the correspond-
ence, where all attempt at an agreement between the two
brokers had ceased before negotiations were commenced
directly with the owner, and the first broker had at no time
before the sale any knowledge of the prospective purchasers,
and the owner, when he consummated the sale and paid the
second broker his commissions, was not aware that he had had
dealings with the first broker; nor does the fact that the
second broker was interested in the purchase entitle the first
broker to commissions, where the owner dealt with him as a
broker only, and did not know that he was otherwise inter-
ested in the purchase.

Error to Wayne; Frazer, J. Submitted October 23,
1896. Decided December 1, 1896.

*Assumpsit* by Eugene E. Douville and another against
Andrew W. Comstock and others for agents' commissions
on the sale of lands. From a judgment for plaintiffs,
defendants bring error. Reversed.

*Moore & Moore*, for appellants.

*Mitchell J. Smiley* and *Frederick W. Stevens*, for ap-
pellees.

MOORE, J. Plaintiffs sued the defendants to recover commissions upon the sale of real estate, and recovered judgment, from which judgment defendants appeal. In March, 1891, defendants, in reply to an inquiry, authorized the plaintiffs to sell about 13,000 acres of land in Mississippi, which they owned, at not less than $5 an acre, and to allow them a commission of 2½ per cent. if they made a sale. The plaintiffs were not given an exclusive agency to sell these lands. A map was prepared, showing these lands for sale, and hung in plaintiffs' office, in New Orleans. J. H. Moores, of Lansing, who was a real-estate broker, who was operating in real estate in Mississippi, saw the map, and asked to have a plat of the lands sent him, and for a division of the commissions if he made a sale. April 24, 1891, plaintiffs wrote Moores: "Enclosed find plat. Price is $5, net. We have a small commission at that figure, but not enough to divide." Some correspondence ensued between Moores and the plaintiffs about a division of the land into smaller groups, and Moores informed plaintiffs that he could place some of the groups at $3.50 an acre, and some at $4.25; and, in turn, plaintiffs corresponded with defendants about the divisions and offers of Moores, but did not inform the defendants at any time that they were having communications with Moores. Defendants declined to take less than $5 an acre. June 27, 1891, Moores wrote the plaintiffs that he was satisfied he could place the lands at $4, possibly at $4.25, an acre (a commission to come out of that sum, to be equally divided); that, at any higher price, he did not think it worth while to try and place them. July 2d, plaintiffs replied that the lands could not be bought for less than $5 net; that, to provide a commission to divide, they must be sold at $5.25.

This was all the correspondence had between the plaintiffs and Moores for two years; and no further communication passed between the plaintiffs and defendants until January 14, 1892, when plaintiffs, in a letter relating to other matters, inquired:

"By the way, what price are you holding your lands at now? Remember, we do not hawk any lands through brokers. Handle lands on commission only. Ask for no refusals unless we have a prospective customer, who is ready to examine. On these conditions, we would like to have you quote to us the lowest price at which you would sell on the basis of a 2½ per cent. commission."

Defendants did not reply to this inquiry, and in a letter referring to another matter, dated New Orleans, February 14, 1892, plaintiffs wrote to defendants:

"We have again established our office here for the winter, for the sale of Southern lumber lands. Can we again offer your lands on the same terms as last year, providing we get a customer for lands in that locality?"

No reply was sent to this inquiry, and no communication was had between the plaintiffs and defendants until March or April, 1893, at which time plaintiffs had learned that a sale had been made, and made a claim for commissions. On the trial, plaintiffs testified that they understood that the defendants had a right to employ other brokers, or to sell the lands themselves.

On the trial of the case, Mr. Moores testified that his letter of June 27th was true; that he had tried his best to sell the lands, and that he could not get any higher price at that time; that when he got plaintiffs' reply, stating that the lands, to provide a commission to divide, must be sold at $5.25 per acre, he dropped the matter for the time being, entirely; that he did not have any one to whom he could sell for $5, even. This testimony was stricken out by the court, and an exception taken by defendants. He also testified that, if plaintiffs had refused to give him part of the commission, there would have been no sale. This was also stricken out, and an exception taken. And in the letter sent by the plaintiffs to defendants June 15, 1893, they wrote, "These negotiations went on until some time in July, 1891, after which we heard no more from him [Moores] on the subject, and concluded he had given it up."

One of the parties with whom Mr. Moores was negotiating for a sale of the lands while the correspondence was going on between him and the plaintiffs was Mr. McPherson. After the termination of the correspondence between Mr. Moores and the plaintiffs, and about the 1st of September, 1891, he visited the defendants, at Alpena. They knew him as a real-estate broker, and did not know and were not informed that he had had any communications with the plaintiffs in relation to the lands. On September 5, 1891, the defendants authorized Moores to sell the lands at $5 an acre, and agreed to give him 2 per cent. commissions.

Through the instrumentality of Moores, on March 4, 1892, a contract was made between the defendants and Alexander McPherson, trustee, for the sale of these lands, at $5 an acre. The purchase price was contributed by a number of persons, according to their interest. The lowest contribution was one thirty-second part of the purchase price, and the highest contribution was four thirty-second parts. Mr. Moores furnished no part of the purchase money. His name did not appear either in the contract of purchase or the deed subsequently made, and the defendants had no knowledge that he had, or was to have, any interest in the lands sold, except his commissions as broker. After the sale was completed, the defendants paid to Mr. Moores his commission of 2 per cent., amounting to something more than $1,300. The plaintiffs knew nothing about this sale until in March or April, 1893, when they claimed their commission. Some correspondence was had, looking to a settlement, but no conclusion was reached, and the plaintiffs brought suit.

On the trial, plaintiffs were allowed to show, under objection, that on March 1, 1892, Mr. McPherson and the persons represented by him addressed a letter to Mr. Moores, in which they agreed to buy the land in question, which letter also contained the following statement:

"We further understand that you furnish the estimates

of said land, and do all the work necessary in the closing up of the purchase. Also that you will hereafter have the general care of the same; that you will look after the payment of taxes, and such other work as may be necessary in the care and sale of the land, making no charge for your services, but only such expenses and work as you personally cannot attend to; and that for such services you are to have one-fifth of the net amount for which said lands are sold, left after deducting cost, taxes, expenses, and interest at 7 per cent., compounded annually. It is the further understanding that said lands are to be sold as soon as they will bring $10 per acre, and that either the group of 9,000, or the one of 3,500 acres, will be sold separate when opportunity shall offer at above price."

The defendants objected to the introduction of this letter, upon the ground that they were not parties to it, and had no knowledge of it. It was claimed on the part of the plaintiffs that Mr. Moores had such an interest in the lands, by virtue of this agreement, as to make him one of the purchasers of the land. As before stated, Mr. McPherson was one of the persons Mr. Moores thought might probably purchase, when he was corresponding with the plaintiffs, in 1891. It also conclusively appeared that the persons represented by Mr. McPherson did not make their agreement with each other to purchase until within a short time before the purchase was actually made, in March, 1892, and that some of them were not parties to the negotiations of 1891.

The defendants presented a large number of requests to charge. Those necessary to consider here read as follows:

"Defendants had a right to employ any number of brokers they saw fit, and would only be responsible to the broker who made the sale. (Granted.)

"Defendants could not be held responsible to the plaintiffs for commissions, even if Moores first heard through them that the land was for sale, and then applied direct to the defendants for the agency, secured the agency, and made the sale as agent for the defendants. (The court

stated that this would be given in connection with what he had already charged.)

"The plaintiffs, not having had the exclusive agency for the sale of the land, and not having furnished a purchaser, cannot recover. (Refused.)

"When J. H. Moores came to the defendants, and asked them to permit him to sell the land as their agent, and pay him a commission of 2 per cent., the defendants had a right to do so; and said Moores having sold the property, as their agent, to Alexander McPherson, trustee, and they having paid said Moores for his services as such agent, the plaintiffs cannot recover. (Refused.)

"As between the defendants and Alexander McPherson, trustee, Alexander McPherson alone was the purchaser, and J. H. Moores was the agent for the sale, and therefore the plaintiffs cannot recover. (Refused.)

"As between the defendants and Alexander McPherson, trustee, the only persons who could possibly be said to be purchasers were the parties who paid the defendants the money. The fact that the parties who paid the money agreed to pay Mr. Moores for his services and expenses by giving him a contingent interest in the lands would not make Moores a purchaser from the defendants, and therefore the plaintiffs cannot recover. (Refused.)

"The defendants sold their land to Alexander McPherson, trustee. No part of the purchase price was paid or raised by J. H. Moores. So that all the consideration the defendants ever received was paid by purchasers other than Mr. Moores. The fact that the purchasers, also, at the time of the purchase or subsequently, agreed to give Mr. Moores an interest in the profits for the services that he (Moores) had rendered, and was to render in the future, did not make Moores a party to the original purchase. (Refused.)

"The defendants had a legal right to sell their lands through any broker other than plaintiffs, and, having sold it through J. H. Moores, they were not liable to the plaintiffs, and therefore the plaintiffs cannot recover. (Refused.)

"Plaintiffs had no purchaser for the lands, but only an offer from another broker that he would furnish a purchaser, at a fixed price, for one-half of the commissions. This offer of another broker was refused by the plaintiffs. Consequently the plaintiffs had neither a purchaser, nor

an agent to secure a purchaser, and the plaintiffs cannot recover.    (Refused.)"

The court refused to give these requests, except as above stated, but charged that— .

"If, through the instrumentality of the plaintiffs, a sale of these lands was effected for the price agreed upon between the parties, then the amount of this commission became due.  It was not necessary, as has been stated by some of the counsel in this case, that they should have been actually present at the time of the transfer of the lands, but it was only essential that they should have brought the parties together,—been the effective instrument in making the sale of the lands to the persons who purchased them.   And this is one of the questions, and one of the important questions, for you to determine before making up your verdict in this case.   If you shall find from the evidence that at any time the negotiations that were pending with Mr. Moores, who was the only person with whom the plaintiffs in this case negotiated for the sale of these lands, that if at any time this sale fell through, or was mutually abandoned by these parties, so that they understood that the negotiations had ceased; no more effort was made, or intended to be made, for the sale of the lands at this price,—then I do not think these commissions were earned.   Before the plaintiffs in this case can recover, you must find that it was their actions that were instrumental in bringing about the purchase.

"There is some evidence in this case in regard to the question as to whether these parties were acting as agents,—that is, Mr. Moores was acting as a land broker (that is, a person undertaking to obtain purchasers of land), but in no way acted as a purchaser himself,—and there is a good deal of correspondence in relation to the question as to how he was to be paid; and it is contended, and the evidence is before you in that respect, that Mr. Moores was not intending to purchase these lands for himself, but that he was only negotiating with the plaintiffs for the purpose of procuring a purchaser for them, and of asking them to divide their commissions with him, which they uniformly refused to do.   Now, if, in obtaining these purchasers, he was to obtain his commis-

sion from the purchasers, and they were to obtain their commission from the seller, if you shall find this state of facts to have existed, under the testimony, and the purchasers were obtained by him with that understanding, then the plaintiffs in this suit would be entitled to their commission, if you find that they were instrumental in bringing about this sale.   *   *   *

"I am going to leave the question to you whether Mr. Moores was one of the purchasers in this transaction, or whether he was acting solely as an agent or land broker for selling this land to some other syndicate, or to somebody besides himself; for I charge you, if this purchase was made by Mr. Moores himself, or he purchased it to be interested in it, or receive any of the [benefits] of this sale, inured to him over and above any commission he should receive from any party, or he became interested more than his commissions in the sale, in this transaction, I leave it to you to say whether, under such circumstances, he was or was not one of the purchasers; and I charge you that it is the law in this case that if he acted solely as a land broker, never intending to be the purchaser himself, never participating in the profits, or actually receiving any of the benefits, over and above his commissions, then he was at liberty, as such land broker, with the understanding as is shown by the evidence in this case, to have negotiated this sale with somebody else, if he himself was no party to it, and he would have been entitled to his commissions, and the sale brought about in such a way would not inure to the benefit of the plaintiffs, and they would not be entitled to commissions on the sale."

We cannot agree with the learned judge that there was anything in this case to submit to the jury. The evidence shows very clearly that the plaintiffs did not procure a purchaser of these lands. The plaintiffs knew that Mr. Moores was acting in the capacity of a broker, but did not know for whom he was acting. Their negotiations with him resulted in a proposition from him to place the lands at $4 and $4.25 an acre, the commissions to be divided between them. This offer was unqualifiedly refused. The plaintiffs regarded the matter as ended.

This is indicated by the letters already mentioned, and by the fact that nothing was done by them afterwards to find a purchaser; and, so far as the record shows, plaintiffs never did anything further about procuring a purchaser of the lands. It is, of course, not necessary that the broker should be present at the sale; but the law is well settled that his efforts must be the procuring cause of the sale, to entitle him to recover. Mechem, Ag. § 966; *Kelso* v. *Woodruff*, 88 Mich. 303; *Wylie* v. *Bank*, 61 N. Y. 415; *Sussdorff* v. *Schmidt*, 55 N. Y. 319; *Sibbald* v. *Iron Co.*, 83 N. Y. 378; *Dreyer* v. *Rauch*, 42 How. Prac. 22. See *Thuner* v. *Kanter*, 102 Mich. 59. There is nothing to show that plaintiffs knew, prior to the sale, that McPherson, as trustee or otherwise, proposed to buy these lands, or that McPherson knew that the plaintiffs were authorized to sell them. The plaintiffs understood that they did not have the exclusive agency for the sale of these lands; that defendants were at liberty to sell them, or to employ other brokers to do so. Moores was employed by the defendants, in good faith, in the capacity of a broker, and was paid his commission, without any knowledge on the part of the defendants that plaintiffs had ever communicated with Mr. Moores in relation to the sale of these lands, and after every offer ever made by the plaintiffs for any prospective buyer had been rejected, for the reason that the price offered was several thousand dollars less than the price for which plaintiffs were authorized to make the sale. To require defendants to pay plaintiffs a commission under such circumstances would be unjust. *Tinges* v. *Moale*, 25 Md. 480 (90 Am. Dec. 73); *Ward* v. *Fletcher*, 124 Mass. 224; *Vreeland* v. *Vetterlein*, 33 N. J. Law, 247; *Wylie* v. *Bank*, supra; *Ahern* v. *Baker*, 34 Minn. 98; *Sibbald* v. *Iron Co.*, supra; *Dreyer* v. *Rauch*, supra; Mechem, Ag. § 969. See, also, *Glenn* v. *Davidson*, 37 Md. 365.

The circuit judge left it to the jury to say whether Mr. Moores was in fact a purchaser, and authorized them

to find a verdict for the plaintiffs if they found that Mr. Moores had any interest in the lands purchased, except as a broker. This was error. Mr. Moores' name did not appear, as grantee, either in the land contract or deed. He contributed nothing to the purchase price paid the defendants. All the negotiations between him and the parties to this litigation were conducted upon the basis of his being a broker. For the purposes of this case, he must be so regarded. The circuit judge should have directed a verdict in favor of the defendants.

Judgment is reversed, and no new trial ordered.

The other Justices concurred.