## WEST *v.* HUDSON.

1. BROKERS—COMMISSIONS—CONTRACTS—EVIDENCE.

In order to be entitled to recover his commissions, a broker must show that he has completed his undertaking according to its terms, or that its completion was prevented wrongfully by his principal.

2. SAME.

Evidence examined, and *held*, to warrant the trial court in submitting a loan broker's claim for commissions, that his principal prevented him from earning, to the determination of the jury.

Error to Wayne; Hosmer, J. Submitted April 4, 1912. (Docket No. 31.) Decided October 1, 1912.

Assumpsit by George M. West against Joseph L. Hudson for commissions as loan broker. Judgment for plaintiff. Defendant brings error. Affirmed.

*Sloman & Sloman,* for appellant.

*Henderson, Martindale & Grose,* for appellee.

MOORE, C. J. Plaintiff, doing business in Detroit, brought this action to recover damages for alleged breach of contract in relation to the securing of a loan of $500,000. He recovered a verdict and judgment for $2,775. The case is brought here by writ of error.

The attorneys for the defendant presented 40 written requests to charge. The first of these called for a directed verdict in favor the defendant. Many of the others were substantially repetitions of the same propositions. None of them were given, except as covered by the general charge.

This charge is the subject of so many of the assignments of error, and it also contains a statement of so many of the

facts contained in the record, that it is desirable to quote from it quite freely:

" In the spring of 1908 the defendant, who held title to what is known as the J. L. Hudson Store, in the city of Detroit, desired to procure a loan for the benefit of his corporation, and he applied to Mr. West to procure, as a broker, such a loan for him. An application was made at that time to the Penn Mutual Life Insurance Company of Philadelphia, which was a written application, in part as follows:

"'DETROIT, MICH., May 5, 1908.

"'I hereby make application to the Penn Life Insurance Co. for a loan of $500,000, payable at the expiration of five years, at four and one-half per cent. interest per annum, payable semi-annually, principal and interest to be payable at the said company's office in Philadelphia, Penn., in gold coin of the United States of the present standard of weight and fineness, or in its equivalent at lender's option, and state that application has not been and will not be made elsewhere until an adverse decision is rendered by said company, which is hereby given the exclusive right to take the proposed mortgage.'

" Under and by virtue of such an application, of course, it became the duty of Mr. Hudson not to make an application elsewhere until a reasonable time had passed to give the company a right to determine whether it would entertain that application. Now, nothing came of this; and this application is of comparatively slight importance, except, perhaps, gentlemen of the jury, it may throw some light on what occurred thereafter. At all events, the Penn Mutual Life Insurance Company of Philadelphia declined to make the loan as desired; and nothing seems to have been done thereafter until, I think, the month of December of that year.

" Thomas C. Perkins was a broker of Hartford, Conn., and some time in the month of December Mr. West proposed to make an application to the Travelers' Insurance Company of Hartford, and he made that suggestion to Mr. Hudson; and I think the evidence would tend to show that he stated to him at that time that he still had in his possession the written application which had been made in the spring for a loan to the Penn Mutual Life Insurance Company, and that he would on that basis proceed to try to interest the Travelers' Insurance Company in a similar loan. This application, as I said before,

may be of some value in determining what was meant by the correspondence that thereafter took place between the plaintiff, Mr. West, and the broker, Mr. Perkins, in Hartford. Now, on the 5th of December, Mr. West, who naturally was desirous of obtaining a commission, wrote to Mr. Perkins, the broker in Hartford, substantially as follows:

"'Have you an outlet in your city for a $500,000 Detroit real estate loan on centrally located business 'property that has an appraisement of $1,100,000, the rate of interest not to be over 4½%? If your reply is, "Yes," we can send you a signed application we now have in our possession.'

"On the 7th of December Mr. Perkins wrote to Mr. West as follows:

"'It is barely possible that I might be able to place the loan you speak of, $500,000, on a centrally located business block in your city, but it would be impossible to place it at four and one-half per cent. If your client would care to accept four and three-quarters, I would put the application before one of the companies here who have shown some interest in the matter. This company tells me that they would not care to loan on the property unless it was strictly a business block. That is, they would not care to loan on it if it was a storage property, or if the property contained a theater or a brewery. If you will send me on full particulars with regard to the loan I will take it up at once upon receipt of same.'

"On the 9th of December Mr. West wrote to Mr. Perkins:

"'In compliance with your favor of the 7th, we beg to hand you herewith inclosed an exact copy of the application we have on file for a loan of $500,000 made by Mr. J. L. Hudson, of Detroit.'

"It was a typewritten copy, and did not contain an exclusive privilege, nor did it contain the five years time, nor several other things, but as a statement of the business property I think it was substantially a copy of the Penn Mutual application.

"'We cannnot offer same at better than 4½%, but feel quite confident that Mr. Hudson may accept 4¾% if the matter is closed without delay. In regard to the payment of the principal this can be left entirely to your client. Mr. Hudson's building is entirely surrounded by business blocks, and one public building, our public library. Please act promptly in regard to this loan as Philadelphia parties are seriously considering it, and might any minute close it

up. If you have anything definite to say upon receipt of this letter, and should like to talk with us regarding it, wire us and we should be very glad to send some one to Hartford for an interview. The commission will be one-half of one per cent. if loan is made as per application. In all probability, however, we can do better than this if we have something tangible to submit to Mr. Hudson.'

"On the 10th of December Mr. Perkins wrote to Mr. West as follows:

" 'I am in receipt of your favor of December 9th, inclosing copy of application for a loan of $500,000 made by Mr. J. L. Hudson of Detroit. This loan is under consideration, and I can not find out definitely whether it will be favorably considered or not, as people put it up to me that they would let me know first if they would consider a loan of this size, and second, they would not consider it at 4½%, and if they would consider it at all it would be at 5%. If they do consider it I will not know anything definitely about it before Tuesday at the earliest, as there will be no meeting of their directors before that time.'

"On the 11th Mr. Perkins writes to Mr. West:

" 'The Hudson loan for $500,000 will be considered by the finance committee of the Travelers' Insurance Company Tuesday. That is, they will let me know definitely if they care to make the loan. They say they will not consider this loan for less than five per cent., so in case they tell me they are willing to take it on at that rate I will wire you Tuesday for instructions.'

"And on the 15th of December, 1908, a telegram, I think, was sent:

" 'Travelers will send man to investigate loan if offered at 5%. Answer.'

"And Mr. West telegraphed to Mr. Perkins:

" 'Hudson refused loan offered by Philadelphia parties Saturday at 5%. Four and half best can do.'

"And on the 16th of December, Mr. Perkins wired to Mr. West:

" 'Best I can get is Travelers' say they will reconsider loan at 4¾ next Tuesday meeting, subject to investigation if accepted. Wire if I can offer.'

"On the 17th, Mr. West writes to Mr. Perkins of yesterday relative to Hudson loan with the Travelers' Insurance Company and regrets being obliged to—

"'Wire you today that Mr. Hudson will not accept a higher rate than 4½%. Since wiring you yesterday he has been approached by two eastern concerns represented by local people, who will consider the loan at four and half. If the Travelers' Insurance Company wish a firm offer for a loan at their Tuesday meeting at 4½, let us hear from you and we will grant their requests if loan is not made in the meantime.'

"And on the 18th Mr. West telegraphed to Mr. Perkins:

"'Hudson insists on 4½ rate, at which figure he will close immediately.'

"And on the 19th Mr. Perkins wired to Mr. West in Detroit here:

"'Travelers' want firm offering of the Hudson loan at 4½% for meeting Tuesday. Wire answer.'

"And on that day Mr. Perkins wrote to Mr. West as follows:

"'I am in receipt of your favor of Dec. 17, and note what you say in regard to Hudson loan. I wish to confirm the wire sent you today stating that the Travelers' want a firm offering of this loan at their meeting which takes place next Tuesday and trust you will secure this offer.'

"Later:

"'I am in receipt of your wire of even date and note that I can offer this loan Travelers' at their meeting Tuesday, and trust that we can push the thing through now.'

"A telegram addressed to Mr. Perkins on the 19th:

"'We can offer loan firm to Travelers' for meeting Tuesday.'

"A letter on the same date:

"'We beg to acknowledge receipt of your wire of even date stating that the Travelers' wanted a firm offering the Hudson loan at 4½% for their meeting Tuesday, and we wired you granting request.'

"Now, gentlemen of the jury, the principal contention here, I think, is what is meant by the words 'firm offering,' as it is used in that telegram—in these telegrams—particularly the telegram:

"'We offer loan firm to Travelers' for meeting Tuesday.'

"It is contended on behalf of the plaintiff in this case

that the words 'loan firm to Travelers' for meeting Tuesday' meant that exclusive privilege, such as was contemplated in the written language embodied in the Penn Mutual Insurance Company, was given to the Travelers' Insurance Company of Hartford; that is to say, that they should have the exclusive privilege of considering the loan, at least for a reasonable period, to enable them to determine whether they would take it or not.  It is contended on behalf of the defendant in this case that the words 'loan firm' meant an exclusive privilege only for the Tuesday on which the finance committee sat.  I think, under the testimony in this case as it has been given to you from the witness stand, and as you may deduce the meaning from the correspondence, it becomes a question for you to say what the exclusive privilege was that was given by this telegram.  Did it mean, as contended by the plaintiff, that there was an exclusive privilege offered to the Hartford to take the loan, and that that should be an open privilege until at least a reasonable time had elapsed in which they might consider and determine it affirmatively; or did it mean, as contended by the defendant in this case, that the privilege extended only through the meeting of the finance committee, which took place?  You have heard the testimony; it is for you to say what the truth is. It is for you to say what these words mean, used in the connection in which they are used.

"The exact difference between the parties in this matter is this:  If the plaintiff's theory in this case is correct, it was incumbent upon Mr. Hudson, if the company accepted this loan at the meeting of the finance committee, to allow a reasonable time, not only for an investigation of the title, but also as to an investigation of the value of the property which was offered as security.

"The contention of the defendant is that if the loan was accepted on Tuesday—if the loan was accepted on Tuesday, then all that was open to them thereafter was the consideration of the title, and not an investigation as to the value of the property; and that a reasonable time existed only for that.  Now, as a matter of fact, as you see from the deposition in this case, when the finance committee did meet on Tuesday, they passed at least upon the amount of the loan and substantially upon the terms of the loan.  The application to the Penn Mutual Life Insurance Company of Philadelphia, was for a loan for five years at $4\frac{1}{2}$ per cent. per annum; and in the minutes

of the meeting of the finance committee there is this memorandum among the propositions which were submitted on that day:

"'Home Office. Joseph L. Hudson, $500,000 five or ten years at 4½ per cent. on business property in Detroit, lot 100 by 244, $566,000. Value of property, $669,444. Insurance, $400,000. Assessments, $397,610.'

"And opposite that in pencil, this being, I believe, the original of the minutes of that meeting, is written the word, 'Yes,' from which, gentlemen of the jury, and the testimony, it must become apparent that the Travelers' Company were willing to make the loan, in so far as the amount and the terms were concerned, as applied for, and that it was taken, subject, however, so far as they were concerned, to investigation of the value of the property and as to the title; and so I say to you, gentlemen of the jury, if you find in this case that the meaning of the words 'firm loan' or 'firm offering,' as they have been used in the writing here, mean that the exclusive privilege was given to the Travelers' Insurance Company to consider this matter for a reasonable time, after having determined that the amount and the terms were satisfactory, then you will proceed to consider whether Mr. Hudson has violated, virtually violated, his agreement, in what took place thereafter, later in December—it matters not, I think, the date. It was stated to him—his attention was brought to the fact—that, while they were willing to accept the loan if satisfactory as to value and as to title, they were unable to send a man at once to make that investigation, and Mr. West, in substance, desirous to see if he could hold the matter over in that regard until January. Now you have heard what has taken place—the version of each party as to what took place. It is contended on behalf of Mr. West at that time that he called upon Mr. Hudson, and Mr. Hudson told him he was negotiating with the Northwestern Mutual, and that he thought he ought to be permitted to save commissions, if possible, and that he wished he would string them along until he could determine whether that was possible or whether it was not.

"It is contended on behalf of Mr. Hudson that he told Mr. West at that time that he did not construe the correspondence as Mr. West did, and that in his belief that he was no longer bound; that the option had expired with

the meeting of the finance committee; and that he was no longer holden, inasmuch as the money was not ready for him at that time.

"Now, it is for you to say where the truth lies, and to consider, gentlemen of the jury, in view of all the circumstances—if you find the theory of the plaintiff is right that this firm loan meant an exclusive privilege, after the action of the finance committee, for a reasonable time, to investigate as to the title and value of security—it is for you to say what was a reasonable time, and whether the action of Mr. Hudson in doing what you shall find, under the testimony, he did, precluded Mr. West from making the loan that otherwise would have come. In other words, was Mr. West prevented from making this loan in question? And if, gentlemen of the jury, you find that his theory of the case, as I have outlined it to you, is correct, and that he was prevented while the option still existed to the Travelers' Company, and that he was prevented from earning his commissions in that way, by the action of Mr. Hudson, why, of course, gentlemen of the jury, he is entitled to a verdict at your hands.

"And if, on the contrary, you find that the theory that Mr. Hudson has advanced here is the correct theory, that the words 'firm loan' or 'firm offering' or whatever it is, meant only that so far as the security is concerned—the value of the property is concerned—the exclusive privilege or the right to consider extended only through the finance committee, why, of course, gentlemen of the jury, your verdict should be for the defendant. Or if you find, also, that a reasonable time had elapsed within which they should send a man to Detroit, and they failed to send a man to Detroit, and that, therefore, Mr. West was not prevented from making his loan by the action of Mr. Hudson, why, of course, then your verdict should be for the defendant. It is for you to say, having heard the testimony in the case, whether it shows that Mr. West was prevented in placing this loan or not.

"Now, at the risk of repetition, I think I will, perhaps, advert to one or two of the requests. I am asked to charge you in this case that if you find from a due consideration of all the evidence in the case that the exclusive privilege, whatever you may construe it, which was tendered for the 22d of December was tendered with the express understanding, through the writings, that an examination or investigation of the truth of the statements

made in the application was to precede the final payment of the money to Mr. Hudson, and the taking of the mortgage to the Travelers', and if you find that it was understood by the defendant and by the Travelers' that such investigation was to precede such final action, then I charge you the defendant would not have the right, until such investigation were made and the application denied by the Travelers', to procure a loan elsewhere, without the payment to the plaintiff of his commission, provided, gentlemen of the jury, you find that it was possible, under the circumstances of the case, to make this investigation as to the security and title within a reasonable time, because the question of reasonable time must, of course, be imported into this privilege, whatever it was, that was given to the Travelers' Company; and if you find that the defendant declined to proceed with this application, a reasonable time not having expired, and find it established as above indicated, because he wished to save a commission, and negotiated a loan himself, he cannot now be heard to offer any other excuse for carrying out such contract. In this connection I charge you that, as a matter of law, the defendant had no right to refuse to carry out his contract, on the ground that he wished to negotiate a loan himself, and thus save the commission. You must either find in that regard, of course, that the option or the exclusive privilege, except so far as the examination of the title was concerned, expired with the meeting of the finance committee, or you must find, gentlemen of the jury, that, having been given, and the proposition of the Travelers' Company embodied an unreasonable time in which to carry it out—in which to make the investigation—in either of which cases, of course, the verdict should be for the defendant.

"And I charge you in general that the rule relating to the right of a loan broker may be said to depend upon the same principles which govern the broker who undertakes to find a purchaser for property. The broker must show that he is able to do his undertaking according to its terms, and that its completion was prevented, without his fault, by his principal. For many cases no more satisfactory rule can be laid down than to ascertain: What did the broker undertake to do? Has he completed that undertaking within the time and upon the terms stipulated, and if not, is the fault attributable to his own act, or to the interference of the principal? And if, upon such in-

quiry, it should be determined that the broker has performed his undertaking within the time and upon the terms agreed upon, he is entitled to his commission; if he has not, he is not entitled to the commission, unless the performance was prevented by the principal, under circumstances which gave him no right then and there so to prevent it. And applying these general rules to this case, as I have said before, you will see the application thereof under the instructions heretofore given by me; and if Mr. West was prevented by Mr. Hudson from performing his full contract, or procuring the loan to be made, under the circumstances which gave Mr. Hudson no right, and sought to prevent it, then he is entitled to recover the reasonable value of the services performed in the matters above stated. In this case the circumstances which might so operate have already been pointed out to you.

"Now, to advert to one or more of the requests of the defendant, even at the risk of repetition, I may say, as I said at the outset, that from the evidence given by the plaintiff in this case he has not shown he has procured a party ready and willing to make the loan; and there is no recovery on that basis.

"*Mr. Sloman:* I understand your honor gives this as the law of the case?

"*The Court:* Yes; there is no question about that. There is no claim of that. I am asked to charge you in this case, and I do charge you, gentlemen of the jury—

"*Mr. Henderson:* I take an exception to the gentleman's question.

"*The Court:* I am asked to charge you, and do charge you, that the burden is upon the plaintiff in this case to satisfy you, by a fair preponderance of the evidence, of his right to recover. There is no question about that. It is incumbent upon Mr. West to satisfy you of the very right of his side of the case; to satisfy you by what we call a preponderance of the testimony. When I speak of the preponderance of the testimony, I do not mean necessarily of the number of witnesses, gentlemen of the jury, because, if from the testimony which has been adduced here, both orally and written, you are satisfied of the very right of his side of the case, he has sustained the burden of proof; and, unless he does sustain the burden of proof, of course, gentlemen of the jury, the defendant is entitled to a verdict at your hands.

"I am asked to charge you that before a loan broker

who is authorized to procure a loan, and for which he is to be paid a commission, can recover, he must satisfy the jury, by a fair preponderance of the evidence, that he did procure a person who was ready, able, and willing to make the loan sought, and if he failed to do that he cannot recover, unless you find he was wrongfully prevented by the principal. I am asked to charge you that, although an agent employed to procure a loan may spend a great deal of time, and even money, in his endeavor to locate a party or parties who would be likely to make a loan, that that would not entitle him to recover his commission. He must, unless prevented by his principal, bring to his employer a person ready and willing and able to make the loan in the manner and upon the terms authorized by his principal. This is unquestionably so. And so, unless he was prevented from carrying out—from procuring—the loan wrongfully on the part of Mr. Hudson, of course, there can be no recovery in this case.

"I am asked to charge you that if the principal authorized him to procure a loan under certain terms and conditions, within a certain time, he cannot, by procuring a person who is willing to make a loan upon other or different terms, or upon other or different conditions, claim to have earned his commission, and be entitled to recover the same, unless his employer accepts such loan with such changes, so that any offer that he had, before these dealings, at 5 per cent. or 4¾ per cent. gives him no right of action whatsoever as against the defendant.

"I am asked to charge you that all the correspondence introduced into this case, prior to the 19th of December, 1908, can only be considered by you as throwing light upon the relationship between the plaintiff and defendant in relation to the loan, and I think that is so; that is the only object that they have in this case. The right to recover in this action must depend upon what occurred in December; for up to that time plaintiff could make no claim for what he had done, or claimed to have done, for procuring, or attempting to procure, a loan for the defendant.

"I am asked to charge you, and give it to you at the risk of repetition, that I may give the language of counsel: It is undisputed from the evidence in this case that on December 19, 1908, Thomas E. Perkins, a broker at Hartford, Connecticut, communicated to plaintiff by telegram as follows:

" 'Dec. 19, 1908.   Travelers' want firm offering, Hudson loan at 4½% for meeting Tuesday.   Wire answer.'

" There seems to be no dispute that this telegram between the parties was submitted by plaintiff to the defendant, and he was authorized by the defendant to send to said Perkins a telegram as follows:

" 'Dec. 19, 1908.

" 'THOMAS E. PERKINS,

" 'Hartford, Conn.

" 'We offer Hudson loan firm to Travelers' for meeting Tuesday.
" 'GEO. W. WEST & CO.'

" That on Tuesday, Dec. 22, 1908, said Perkins wired plaintiff as follows:

" 'If investigation satisfactory Travelers' will take loan 4½%. Cannot send man to Detroit until between January 1st and 15th. Wire immediately if you can hold over.'

" Now I charge you that the telegram by Perkins, of December 22d, was not an unconditional acceptance of the offer, and even if Perkins was authorized to make it for the Travelers', as submitted, the minds of the parties —that is, Mr. Hudson, on one hand, with his offer, and, on the other, the Travelers' with its reply to such offer— never met on the terms of the defendant's offer; and therefore the plaintiff could not recover a commission because of such offer of the Travelers' Company.   I think that is so; and, as I said before, whatever went after—if you should find from what went after that time, that there was such a preventing of the plaintiff from permitting the company to carry out the terms of what you shall find to be the exclusive privilege given by the telegram, then, and then only, is the plaintiff entitled to recover.

" I am asked to charge you, and I think I have charged you, that, unless you find that Joseph L. Hudson, the defendant in this case, gave an exclusive option to Mr. West to place a loan at four and a half per cent. for a period beyond the 22d day of December, 1909, you must find for the defendant.   If you should find that the word for Tuesday, in the telegram respecting firm offering, meant only during the continuance of that meeting, of course, the defendant would be entitled to your verdict; but if you find that the refusal or the exclusive option was to be given for presentation at that meeting, why, of course,

gentlemen of the jury, that might be another matter, as I have already said.

"I think, gentlemen, I have said all that is essential for me to say on the subject. If you find for the plaintiff, you will find such sum as, under the testimony in this case, you believe would compensate the plaintiff; otherwise, of course, the verdict should be a verdict for the defendant.

"Plaintiff claims in this case that he is entitled to recover the sum of $2,500, one-half of one per cent., and interest from, I think, well, say, the first of January, 1909. That, I think, is substantially near enough for the purposes of this case; and, under the evidence in this case, I think, gentlemen of the jury, it is permissible for you to give a verdict, if you find, of that sum, if you find the plaintiff is entitled to recover.

"I think I have said all that it is essential for me to say; and, unless counsel desire to call my attention to some things which I have not intentionally omitted, I think you may follow the officer."

A great proportion of the brief of counsel for appellant and of his oral argument were devoted to the proposition that a verdict should have been directed in favor of defendant. In support thereof, counsel cite *Douville* v. *Comstock*, 110 Mich. 693 (69 N. W. 79); *Antisdel* v. *Canfield*, 119 Mich. 229 (77 N. W. 944), and other authorities. In considering this proposition, in addition to what appears in the charge of the trial judge, it should also appear that there is testimony from Mr. West that when the so-called "option" of December 19th was given, the defendant said:

"All right, go ahead; and if the Travelers' did not come to a decision on Tuesday give them what time they want."

In the testimony of the president of the Travelers' Insurance Company appears the following:

"*Q.* Will you state whether or not, from and after December 22d, the Travelers' Insurance Company stood ready to make an investigation as to the advisability of making this loan with reference to the value of the property offered as security, its title, etc.?

"*A.* Yes.

"*Q*. Will you state whether or not, if the facts had been as represented in this application, Exhibit 4, in reference to this property, in your opinion, the Travelers' Insurance Company would have made the loan?

"*A*. The finance committee approved the loan for $500,000 at $4\frac{1}{2}$ per cent., subject to an inspection of the premises and confirmation of the value stated in the application or memorandum. It was my duty, as chairman of the committee, to complete the transaction authorized by the committee; and our manager of real estate loans, General Newton, would have been sent to Detroit to make the investigation. If his report had confirmed what was stated in the application, the loan would have been made on the terms proposed. The Travelers' Insurance Company was financially able at the time to make a loan of this size."

In the application to the Pennsylvania Mutual Insurance Company, it was stated that the value of the ground was $566,000, and of the building $669,444.60. This application was signed by Mr. Hudson. Attached to this application was a certificate of two expert real estate men, to the effect that they had carefully appraised the property, and that it was worth $1,235,000.

It should also appear that, from Mr. Hudson's testimony, while he had written to the Northwestern Life Insurance Company December 17th in relation to a loan, he did not procure a loan from them in December; and there was no evidence that Mr. Hudson procured a loan very long before the mortgage to the Northwestern Life Insurance Company for $450,000 was made, which mortgage bears date March 2, 1909.

When this testimony is taken into consideration, it will be seen that the instant case is easily distinguishable from the cases of *Douville* v. *Comstock* and *Antisdel* v. *Canfield, supra.*

There is not very much conflict as to the law applicable to a case of this character. The broker must show one or the other of two things: (1) That he has completed his undertaking according to its terms; or, (2) that its completion was prevented, without his fault, by his principal.

See Mechem on Agency, §§ 620, 621, 968-970; *Douville*
v. *Comstock, supra; Antisdel* v. *Canfield, supra; Heaton* v. *Edwards*, 90 Mich. 500 (51 N. W. 544); *Young* v.
*Hubbard*, 154 Mich. 218 (117 N. W. 632).

It was the claim of plaintiff that he had found in the
Travelers' Insurance Company a party ready and willing
to furnish the money to Mr. Hudson; and that, without
his fault, Mr. Hudson prevented the accomplishment of
this purpose, that Mr. Hudson might save the payment
of a commission.

There was a sharp conflict in the testimony. The parties to the litigation contradicted each other as to the
material facts. The case presented was one for the jury,
and could not be disposed of as a question of law

Counsel claim (we quote from the brief):

"In a rather contradictory charge, the court, after indicating during the trial that it was unlikely that the
right of investigation of the property was not imported in
the option, left it to the jury to determine what was meant
by the term 'firm loan,' whether it imported a privilege
of a reasonable time to make an investigation of the security and title, and in the next breath charged them:

"'Because the question of reasonable time must, of course, be
imported into this privilege, whatever it was, that was given to the
Travelers' Company; and if you find that the defendant declined to
proceed with this application, a reasonable time not having expired, and find it established as above indicated, because he wished
to save a commission, and negotiated a loan himself, he cannot now
be heard to offer any other excuse for carrying out such contract.'

"Assuming that the agency was exclusive, and that a
reasonable time was imported in the option, did the defendant have the right to procure the loan himself, before
plaintiff brought some one ready, willing, and able to
make the loan on his terms?"

If a reference is made to what precedes and what follows the quotation made by counsel from the general
charge, we think the criticism that the charge is contradictory will fail. As has appeared already in what we
have said, there is testimony, if believed, from which the

inference can be fairly drawn that plaintiff had procured a party ready and willing to furnish the money, before the defendant had himself effected a loan.

We again quote from the brief:

"Assignment of Error. In making the remark in the presence of the jury:

" ' *The Court:* It would be extraordinary for a loan to be made without an examination of the property.'

" While this occurred during a colloquy between the court and counsel, the remark was necessarily prejudicial to the defendant. Jurors are only too prone to be influenced by the court's view of the facts; and this court has so often called attention to the necessity of the circuit judge avoiding conveying his own view or impressions to the jury that it seems superfluous to cite cases. One of the principal issues involved was whether the option given carried with it the right to investigate as to the value of the property, and this remark of the court, while unintentional, would naturally foreclose the defendant's claims before the jury."

In view of the testimony, on cross-examination, of Mr. Hudson, and of the magnitude of the transaction, and of what we all know about business, we do not think this assignment is well taken.

Counsel complain about that portion of the charge which refers to the measure of damages, and insist there was no data furnished nor evidence given affording a proper basis for the amount of the verdict returned by the jury. We do not discover in the record that defendant offered any testimony upon that subject; nor do we find any reference to it in the many requests to charge preferred by counsel for appellant.

Immediately following that portion of his charge, the judge turned to counsel, and said: ,

"I think I have said all it is essential for me to say; and unless counsel desire to call my attention to some things which I have not intentionally omitted, I think you may follow the officer."

Counsel remained silent as to the question of damages. The plaintiff gave direct testimony upon that subject. The correspondence and the other testimony indicated in some degree what was done and the magnitude of the transaction. We do not think it can be said there was error as to that feature of the case. The case was argued orally at length. Excellent briefs have been furnished us. The record has been read with care. We do not deem it necessary to discuss other assignments of error. The testimony was very conflicting. The theories of the parties were carefully submitted to the jury.

The judgment is affirmed.

STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.