SPINDLE *v.* MICHIGAN INVESTMENT CO.

1. BROKERS—COMMISSIONS.
    In order to recover commission, it is necessary for broker to show
    that he was procuring cause of sale, but he need not show that
    he concluded sale in person.

2. SAME—SUPERINTENDENT NOT MAKING SALE NOT ENTITLED TO
    SALESMAN'S COMMISSION.
    Superintendent of sales of subdivision who received commission
    on all sales as such, but who was entitled to extra commission
    as salesman only when he personally made sale, was not en-
    titled to said extra commission although he assisted employer
    in making sale, where he was not procuring cause and did not
    close deal.

3. SAME—MASTER AND SERVANT—COMMISSIONS.
    Nor did fact that employer was procuring cause, and thus saved
    payment of extra commission, entitle superintendent to extra
    commission as salesman.

Appeal from Wayne; Lamb (Fred S.), J., pre-
siding. Submitted October 9, 1931. (Docket No. 75,
Calendar No. 35,939.) Decided January 4, 1932.
Rehearing denied March 3, 1932.

Assumpsit by Benjamin L. Spindle against Michi-
gan Investment Company, a corporation, for com-
missions as real estate salesman. Verdict and judg-
ment for plaintiff. Defendant appeals. Reversed,
and judgment ordered entered for defendant.

*Brown, Stoneman, Lorenzo & Springstun,* for
plaintiff.

*Race, Haass & Allen,* for defendant.

BUTZEL, J. Benjamin L. Spindle, plaintiff, was
employed as a salesman on a commission basis by

On procuring cause of sale as entitling broker to compensation, see
annotation in 44 L. R. A. 321.

defendant, Michigan Investment Company, a corporation, engaged in the real estate business. He was allowed a drawing account of $200 per week, which was charged against him on the books of the company. Against this debit, he was credited with commissions when, as, and if earned. He was appointed superintendent of sales of a subdivision situated in Grosse Ile, Michigan. Defendant was entitled to a commission of 25 per cent. on sales in the subdivision. It in turn agreed to pay 2 per cent. of the sale price as an overwriting commission to its superintendent, 10 per cent. to the salesman, and 2 per cent. to the general sales manager. Plaintiff devoted his time exclusively to the subdivision, and on the sale of one lot by another salesman, early in 1925, he, as superintendent, received a commission of 2 per cent.

Later in the year, Richard Lambrecht, president of defendant corporation, met Bruce Wark, a real estate dealer. The latter was interested in the purchase of the entire subdivision. The negotiations moved slowly, and Lambrecht asked plaintiff to assist in closing the sale. Plaintiff does not claim that he had previously discussed the matter with Wark, but, on the contrary, admits that he was first directed to see Wark by Lambrecht. He claims he saw Wark seven or eight times, and that Lambrecht also worked on the deal, and closed it.

When the sale was consummated, Wark received a commission of 5 per cent., which he claimed as a real estate dealer. Plaintiff received 3 per cent. instead of 2 per cent., as superintendent, the extra 1 per cent. being allowed because the entire subdivision was quickly sold as an entirety, and, as Lambrecht testified, plaintiff had been to some previous expense in an effort to sell the property to others. Plaintiff made no objection to the amount

of the commission at the time, but later asserted a claim for an additional 4 per cent. He claims that, as the salesman's commission was 10 per cent. and the superintendent's commission 2 per cent., or an aggregate of 12 per cent., and only 5 per cent. was paid to Wark and 3 per cent. to plaintiff, there remained a balance of 4 per cent. which he seeks to recover in the present suit. A number of very important questions arise. Plaintiff claims that, inasmuch as he was a licensed real estate salesman and not a broker, the statute of frauds, 3 Comp. Laws 1929, § 13417, does not apply, and, therefore, no written agreement to pay him the commission as compensation was necessary; further, even if it were necessary, a rather indefinite resolution of defendant's board of directors contained in its minutes, signed by the secretary, was sufficient to take the case out of the statute. Assuming that the court was correct in holding with the plaintiff on these questions, which we find unnecessary to pass upon for the purpose of this decision, we believe that the case should be reversed on the ground that the great weight of the testimony in the case, supported by plaintiff's own admissions, shows that he was not the salesman who effected the sale, and that he was entitled to a commission solely as superintendent. Plaintiff admits that he did not find the customer, who had already been found by Lambrecht. He further admits that Lambrecht closed the deal. The respective duties of the superintendent and salesman are not set forth in any written agreement. We quote, however, from plaintiff's cross-examination, as follows:

"*Q.* You were acting as superintendent of the sales force of this particular subdivision at that time?

"*A.* Yes, not only superintendent, but salesman as well.

"*Q.* Primarily your contention is that you were superintendent of this sales force?

"*A.* Yes.

"*Q.* You may have made some sales?

"*A.* Yes.

"*Q.* That was your prime business?

"*A.* Yes.

"*Q.* As superintendent of that sales force, just tell us what your duties were?

"*A.* I was not superintendent of any sales force. There was no sales force under me. I would say he made the proposition to handle this property with the salesmen connected with the office but not working under me. They were working for Lambrecht and Kelly and on different subdivisions and had the right to sell on any subdivision.

"*Q.* In this particular subdivision there was a sale made before it was sold to Wark?

"*A.* Yes, by a man named Nelson that was with Lambrecht and Kelly long before I was there.

"*Q.* Did you get any commission?

"*A.* Two per cent.

"*Q.* As what?

"*A.* Superintendent.

"*Q.* You were acting as superintendent of the sale of this particular subdivision irrespective of what the salesmen or where they came from?

"*A.* Yes. * * *

"*Q.* What were your duties as superintendent?

"*A.* To offer any assistance that I could to the salesmen.

"*Q.* Exactly so?

"*A.* Yes.

"*Q.* And that is what you did?

"*A.* Yes; I never had but one man ask me, and that was Nelson, and I gave him a lot of time.

"*Q.* And you only collected two per cent.?

"*A.* That's all. That was the agreement that I undertook—the proposition that they submitted to me.

"*Q.* That was the method upon which you were working on this particular subdivision?

"*A.* Yes."

On further cross-examination, he states as follows:

"*Q.* I understand you to have testified this morning that you would be entitled to a 12 per cent. commission on the sale of property under some conditions; is that right?

"*A.* Yes.

"*Q.* When would that be?

"*A.* In the event I made the sale myself.

"*Q.* Unassisted?

"*A.* Yes."

Both Wark and Lambrecht testified that plaintiff did not find the customer or close the deal, but that he merely assisted Lambrecht. The trial judge left the question of whether plaintiff was salesman and superintendent, or only superintendent, to the jury, who rendered a judgment in plaintiff's favor.

In order to recover a commission, it is necessary for a broker to show that he was the procuring cause of the sale; he need not show that he concluded the sale in person. *Douville* v. *Comstock,* 110 Mich. 695, 701; *MacMillan* v. *C. & G. Cooper Co.,* 249 Mich. 594, 598. A situation might even arise where the broker does not acquaint the customer with the property in the first instance, but nevertheless is the procuring cause through subsequent negotiation. *Wood* v. *Smith,* 162 Mich. 334, 342. However, in the instant case, plaintiff did not secure the customer, but only assisted defendant in making the sale. According to his own testimony, he would only be entitled to

the salesman's commission if he brought about the sale unassisted.  This he did not do, but, on the contrary, he only aided Lambrecht, who was active in securing the customer, carrying on the negotiations, and closing the deal.  Plaintiff, however, contends that, inasmuch as Lambrecht was receiving his pay as president of the defendant corporation, and, therefore, was not entitled to any commission, the 4 per cent. should be paid to plaintiff.  The fact that defendant, through its president, was the procuring cause of the sale and thus saved the payment of an extra commission, does not justify the claim of plaintiff, who was paid as superintendent for precisely the services he rendered.

There was no testimony to support the verdict. The evidence showed that plaintiff was not the salesman but only the superintendent, and not entitled to a salesman's commission.

The judgment is reversed, with costs, and the case remanded to the trial court, with instructions to enter a judgment in favor of defendant.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.