## GALA v. SUSNJAR.

1. BROKERS—COMMISSIONS—EVIDENCE—AGENCY.

Evidence adduced in broker's action for commission for sale of retail liquor business *held*, to have presented for consideration of jury the issue as to whether or not plaintiff and his salesman had had negotiations with the ultimate purchaser's stepson and whether the latter was an agent of the purchaser.

2. SAME—COMMISSIONS—HEARSAY—EVIDENCE—AGENCY.

Testimony of plaintiff broker's salesman as to negotiations had with purchaser's stepson over the telephone was not inadmissible in action for commission for sale of retail liquor business, where issues were whether or not plaintiff negotiated with a purchaser, not whether the negotiations were the procuring cause, and further, whether the negotiations had with the stepson of the purchaser were on behalf of an undisclosed principal.

3. SAME—COMMISSIONS—NEGOTIATIONS WITH AGENT FOR UNDISCLOSED PRINCIPAL—EVIDENCE.

A broker suing for commission under written agreement therefor does not have the burden of proving prior knowledge of agency for an undisclosed principal of person with whom negotiations were carried on but only that there were prior negotiations with such an individual and that such an agency may have existed.

4. SAME—REQUESTS TO CHARGE—EVIDENCE—THEORY OF CASE.

Requests to charge in action by broker for commission for sale of retail liquor business that were not based on testimony adduced or on theory upon which the case was tried were properly refused.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6]  8 Am Jur, Brokers § 226.
[2]  8 Am Jur, Brokers § 223.
[3]  8 Am Jur, Brokers § 222.
[4]  8 Am Jur, Brokers § 228.
[5]  8 Am Jur, Brokers § 174.

5. SAME—REQUESTS TO CHARGE—PROCURING CAUSE OF SALE.

Requests to charge that plaintiff broker had burden of showing that he was the procuring cause of sale effected after expiration of exclusive listing period were properly refused, since plaintiff merely had to show that there had been negotiations with a legal agent of the purchaser, and not that the agent had power to negotiate and enter into agreements on behalf of the purchaser.

6. SAME—COMMISSIONS—GREAT WEIGHT OF EVIDENCE.

Verdict for plaintiff real-estate broker in action for commission for sale of retail liquor business *held*, not against the great weight of the evidence, where it appears the place was purchased by the stepfather of man with whom plaintiff and his salesman had had negotiations prior to expiration of period during which plaintiff had the exclusive listing but sale was effected during a subsequent period when plaintiff was entitled to commission for sale if effected to a person with whom negotiations had theretofore been had.

Appeal from Wayne; Breakey, Jr. (James R.), J., presiding. Submitted June 6, 1958. (Docket No. 40, Calendar No. 46,963.) Decided September 9, 1958.

Attachment by Chester Gala, doing business as Gala Realty Company, against Stevan P. Susnjar and Ernest Raicevich, copartners doing business as Momo's Bar, for sums due as real-estate dealer's commission. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Fred Chekaway*, for plaintiff.

*Cohen & Cohen*, for defendants.

VOELKER, J. The defendant copartners owned and wanted to sell a class "C" bar they ran in Detroit known as Momo's Bar. They accordingly listed it with the plaintiff real-estate broker, under the written terms of which they granted the plaintiff the exclusive right for a term of 3 months to sell the busi-

ness for $45,000 upon terms there enumerated "or upon any other price, terms, or exchange to which I (we) [meaning defendants] may hereafter consent." The agreement, dated October 8, 1954, also contained this provision:

"If, during the said period, the business is sold by you or me or anyone else, or if you produce a purchaser ready, willing and able to purchase the business under the terms herein set forth, or if it shall be sold within 3 months after the expiration of this listing agreement to any person with whom you have had negotiations for the sale thereof, I (we) agree to pay you a commission of 10% of the sale price."

During the 3-month period the plaintiff's salesman, one Landa, talked in person or over the phone with a number of prospects, including Harold Brown, the stepson of Ottie Rankins, the ultimate purchaser. Upon expiration of the 3-month period but within 3 months subsequent thereto the defendants agreed to sell their bar to Rankins for $40,000. The plaintiff sued for his commission on this sale to Rankins on the theory that his stepson Brown was the agent for an undisclosed principal, Rankins, and won a jury verdict of $4,000 which survived a battery of usual defense motions: a reserved motion for a directed verdict,* for judgment notwithstanding the verdict, and, in the alternative, for a new trial.

Defendants in their appeal urge that the court erred as follows: in failing to direct a verdict of no cause of action because of a total lack or insufficiency of proofs on the issue of agency or further that, indeed, plaintiff or his salesman had ever had any negotiations with Brown in any case; in its charge to the jury, both in what was given and for certain re-

---

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1957 Cum Supp § 27.1461 *et seq.*).—REPORTER.

quested instructions it refused; and in admitting hearsay evidence. Lastly they urge that the verdict was contrary to the great weight of the evidence.

We do not propose to dissect this record or burden this opinion to show all the various "negotiations" claimed at the trial to have been had by plaintiff and his salesman with Brown concerning the possible purchase of this bar, or as bearing on Brown's possible agency for the ultimate purchaser, Rankins, more than to say that to our mind there was adequate competent evidence to go to a jury on these issues. Plaintiff's salesman testified that he had a series of telephone conversations (from 6 to 9) with Brown, initiated by the latter, during which he told Brown all about the place; that he offered to take Brown to visit the place but that he declined; that Brown told him he was himself in the retail bar business; that they also discussed the possible purchase of other bars also listed with plaintiff. Another witness, barkeep Bacon, said he met Brown when the latter came to his bar interested in purchasing it; that Brown came 7 or 8 times and one time brought his stepfather, Rankins, who spoke to Bacon of the interest "we" have in purchasing a bar, and whom Bacon also showed around the place, which was shortly sold elsewhere; and finally that he had seen Brown working behind the bar at Momo's Bar after the sale to Rankins.

Plaintiff testified that upon hearing that Rankins was dickering directly with one of the bar owners he called upon the defendant Raicevich at the bar on January 19, 1955 (shortly after the 3 months was up), and then told him that Brown was representing Rankins and that Brown was Rankins' stepson who lived under the same roof; that defendant, affecting surprise, thereupon telephoned Brown, who appeared promptly and, during subsequent conversation, conceded that plaintiff's salesman had told him

about the place; and that warm words presently ensued during which plaintiff warned defendant he would hold him to his agreement if he sold the place to Rankins without paying him his commission—which he nevertheless did within a week's time.

Also of some significance is the fact that the price finally paid by Rankins for the bar, $40,000, was just $500 under the net defendants would have received anyway had the sale been made in accordance with the listing, less plaintiff's commission, namely, $45,-000 with a $4,500 commission to plaintiff. Of further significance is the fact that neither Brown nor Raicevich denied the agency charged by plaintiff either during the noted conversation at the bar just before it was sold or later at the trial. We have already noted that Raicevich knew where to reach Brown and was able to summon and produce him by phone in a few minutes.

Brown did not testify at the trial but his step-father Rankins did, denying that Brown was his agent, but admitting on cross-examination that he, Rankins, worked for a time as a bartender in a tavern partly owned by Brown before the latter ultimately disposed of his interest (the witness did not know exactly when); that he trusted Brown's judgment and superior experience; and that Brown managed the new place nights and at all times during the absence of Rankins; and that Brown was present when the deal was closed for the purchase of the bar. A woman also testified that it was she who first told Rankins of the availability of the bar. Defendants themselves denied all knowledge of any agency. Defendant Raicevich in his testimony did not deny or mention the presale "showdown" conversation charging agency held at the bar as earlier testified to by plaintiff. As noted, Brown did not testify. The jury was evidently unimpressed by the defense story and found for plaintiff.

Defendants urge that the testimony of plaintiff's salesman as to negotiations had with Brown over the telephone was inadmissible as hearsay to bind these defendants. We cannot agree. The 2 main issues in this case were whether plaintiff "negotiated" with a purchaser, not whether these negotiations were the procuring cause of any sale (although we feel that an arguable testimonial issue was also framed on that score), and further whether, in this case, the negotiations had with Brown were on behalf of an undisclosed principal, Rankins. We think that anything bearing on these 2 disputed issues was properly admissible.

Despite the rather strong evidence and permissible inferences here that one of defendants (the other partner was in Florida) probably knew all along that Brown was "fronting" for Rankins (and, for that matter, that Rankins was to some extent also probably "fronting" for Brown, who already owned an interest in a tavern, before the properly inquisitive liquor control commission), and further despite the strong overtones in this record that this whole clumsy maneuver was planned to prevent the plaintiff from getting his commission and at the same time make the sale more attractive, all at no substantial extra cost to defendants—despite all this, it was not necessary to his case that plaintiff prove defendants' prior knowledge of Brown's agency for Rankins (as he might possibly have had to do had his action sounded in fraud) but only that there were prior negotiations with Brown and that such an agency may have existed. Therefore the evidence complained of was competent and properly admitted. If an agency cannot be proved, as was done here, then an invulnerable new "straw man" method has been found to cheat real-estate men out of their commissions. See, generally, *Brooks* v. *Leathers,* 112

Mich 463; *Parker* v. *Davis,* 178 Mich 93; *Decker* v. *Widdicomb,* 137 Mich 331.

On the issue of claimed faulty instructions and the failure of the trial court to give certain requested instructions, we can, perhaps, best quote from the painstaking opinion of the trial judge, as follows:

"Defendants' requests number 1, 2 and 3 are founded on the theory that plaintiff must have been shown to be the procuring cause [of the sale]. The cases cited thereunder are cases that involve a different set of facts than in the case at bar. The cases referred to and the law applicable, to support defendants' requests 1, 2 and 3, did not involve an exclusive listing wherein there was a provision, as there is here, relative to a sale 'within 3 months after the expiration of this listing agreement to any person with whom you have had *negotiations* for the sale thereof.'

"Request number 4 is set up on a basis of facts not testified to nor shown in the proofs—no showing of any breaking off of negotiations; in fact, this is contrary to the claim of the defendants, which was that there were no negotiations.

"Number 5: The request is based upon the law relative to a salesman or real-estate agent being the procuring cause of a sale. That law is not applicable under the theory of this case, which was sent to the jury solely upon the question of whether or not there had been any *negotiations* with the subsequent purchasers.

"Request number 6 is likewise based upon the theory of a procuring cause, which has heretofore been shown is not the theory of this case, and is contrary to the theory upon which the listing agreement is based.

"Request number 7: This is a request not in accordance with either the claims of the plaintiff or the testimony in the case. The listing, exhibit 1, does not provide, as a condition, that the one who is involved is to be shown to have negotiated *and* entered

into an agreement, but, rather, merely to have had negotiations. Request number 7 is based upon a concept that is foreign to the testimony in this case, in that the request would have had the court instruct the jury that the plaintiff 'must prove by a preponderance of the evidence that Harold Brown was the legal agent of the purchaser, with power *to negotiate and enter into agreements on his behalf.*'

"It was not necessary that it be shown that Harold Brown had the power to enter into any agreement whatsoever on behalf of the prospective purchaser. To that extent the requested charge was improper to be given, and was properly refused.

"The court submitted this case to the jury on the one question, whether or not there were negotiations conducted on behalf of Rankins by one authorized to conduct negotiations. There was ample testimony from all the proofs on which the jury could have found an affirmative answer to that question. They so found and the verdict shall stand. Motion for new trial is denied; motion for judgment *non obstante* is denied; judgment shall enter in favor of the plaintiff against the defendants." (Emphasis by trial court.)

From the foregoing it follows that in our opinion the verdict of the jury was not contrary to the great weight of the evidence. Indeed, any other verdict might have been. Affirmed, with costs awarded to plaintiff.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.